547 So.2d 766 (1989)
Sara Tedder NICHOLS
v.
Lee Edward TEDDER.
No. 58289.
Supreme Court of Mississippi.
June 28, 1989.
*767 Rex F. Sanderson, Sanderson & Brown, Houston, for appellant.
Paul M. Moore, Jr., Moore & Moore, Calhoun City, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and SULLIVAN, JJ.
PRATHER, Justice, for the Court:
The principal issue at bar is parental support of post-majority children in college. Lee Edward Tedder, father, brought this action in the Chancery Court of Calhoun County for modification of the child support provisions of an earlier divorce decree. The chancellor granted the petition for modification of the prior decree and denied the counterclaim brought by the mother, Sara E. Tedder Nichols. From this decision favoring the father, the mother appeals and assigns as error the following:
(1) It was error to hold that support should be terminated as to the oldest child for the single reason that the child reached the age of 21 before she completed her last semester of college.
(2) It was error to order that the noncustodial parent could claim a child for income tax exemption purposes.
(3) It was error to allow the father credit on an existing judgment for child support arrearage.
(4) It was error to deny the mother's counterclaim to restore the father's child support obligations to the amount established under the original divorce decree.

I.
The facts of this case are essentially undisputed. The parties were divorced by final decree on November 11, 1981. The three minor children were placed in the custody of the mother with child support payments required from the father. A second decree was entered on July 15, 1983, awarding appellant a judgment of $5,245.00, plus 8 percent interest, for support arrearage, and modifying the amount of monthly support from $400 total, pursuant to the original decree, to $350 total "... until the financial condition of the defendant improves."
The oldest child, Amanda, had her twenty-first birthday on November 3, 1986, while in her senior year at Blue Mountain College. The older son Darren, was a seventeen year-old high school senior, and he moved from his mother's home to his father's home in June, 1986. The youngest child, Christopher, remained with his mother, and the father continued to make support payments to the mother until December *768 1986, when the hearing was held. The father paid $350 per month as support for all three children from July 15, 1983 until December, 1986, except for the month of June, 1986, when he paid only $250.
In anticipation of Amanda's twenty-first birthday, her father, Lee Edward Tedder, petitioned the Chancery Court of Calhoun County for modification of prior decrees of that court under which he was obligated to pay child support for the benefit of his three children, including Amanda. At the time of the hearing in December, 1986, which decision is appealed, the father had not paid any amount on the arrearage of over $5,000.00 assessed against him at the July 15, 1983 hearing. The court granted the father a reduction of support, and a $558 credit on the 1983 judgment for the months Darren, the older son, lived with the father during 1986, and for the months after Amanda turned twenty-one years of age. The court ordered that the father could claim the two sons as exemptions for purposes of income tax filings.
The chancery court denied the mother's counterclaim to increase the youngest child's support from $350 to $400 per month. The chancery court then reduced the child support due from the father to the mother to the amount of $217 for the youngest son, Christopher. The mother then appealed to this Court.

II.

WAS IT ERROR TO HOLD THAT CHILD SUPPORT SHOULD BE TERMINATED AS TO THE OLDEST CHILD FOR THE SINGLE REASON THAT THE CHILD REACHED THE AGE OF 21 BEFORE SHE COMPLETED HER LAST SEMESTER OF COLLEGE?
Amanda Tedder turned twenty-one on November 3, 1986. As it happened, she was in her senior year of college with less than two semesters remaining until graduation. In anticipation of Amanda's 21st birthday, her father, Lee Edward Tedder, petitioned the Chancery Court of Calhoun County for modification of prior decrees of that court under which he was obligated to pay monthly child support for the benefit of his three children, Amanda included. Lee Tedder charged in his petition that, inter alia, the court should relieve him of the obligation of providing child support for the benefit of Amanda once she turned twenty-one. It is his position that the age of majority in this state for purposes of orders touching the care and maintenance of children is 21 years, unless emancipated earlier.
The decree of the trial court, entered December 19, 1986, held in pertinent part that "Since Amanda has attained the age of 21 years on November 3, 1986, Lee Edward Tedder is no longer required to pay child support and he is entitled to a credit against the Judgment for support paid Amanda since she became twenty-one (21) years old." The mother complains of error in this holding.
At the outset, this Court desires to clarify the exact nature of the payments for which Mr. Tedder sought modification. There is a blurring in the briefs of the parties of the distinction between child support payments and payments for educational expenses.
Mississippi Code Annotated, § 93-5-23 (Supp. 1988), provides the trial court with authority to make all orders incident to divorce "touching the care, custody and maintenance of the children of the marriage... ." In addition to the authority conferred by Section 93-5-23, Miss. Code Ann., § 93-11-65 (Supp. 1988), confers upon the chancery court of the proper county the authority to hear and determine matters relative to the "custody, care, support and maintenance of minor children ..."
An order issued under the authority of either of the above code sections dealing with the care and maintenance of children of the marriage may, and often does, provide for the payment of several distinct types of expenses. The phrase "child support" is often used to describe all of these distinct expense payments. However, under the above cited code sections, regular child support is but one type of expense *769 which the court may award for the care and maintenance of children.
In the context of child care and maintenance orders, regular child support refers to the sums of money which the particular parent is ordered to pay for the child's basic, necessary living expenses, namely food, clothing, and shelter. Other sums which a parent may be ordered to pay for the care and maintenance of the child are the expenses of a college, or other advanced education. As noted in Duett v. Duett, 285 So.2d 140 (Miss. 1973), the statute authorizing the court to enter decrees providing for the care and maintenance of the children is "susceptible of an interpretation to allow" the court to order the payment of expenses for a college education. 285 So.2d at 142, quoting Pass v. Pass, 238 Miss. 449, 458-59, 118 So.2d 769, 773 (1960). Whether in fact a parent will be ordered to pay or contribute to the expenses of a college or other advanced education is controlled by an application of the principles set forth in Rankin v. Bobo, 410 So.2d 1326 (Miss. 1982), Hambrick v. Prestwood, 382 So.2d 474 (Miss. 1980), and Pass v. Pass, supra.
Still other items which may properly be awarded pursuant to a valid child care and maintenance order are health related expenses such as reasonable and necessary medical, dental, optical, and psychiatric/psychological expenses. See Martin v. Martin, 538 So.2d 765 (Miss. 1989); Clark v. Myrick, 523 So.2d 79 (Miss. 1988); Bush v. Bush, 451 So.2d 779 (Miss. 1984). A parent can also be required to absorb insurance expenses such as maintaining medical and hospitalization insurance on the child, and maintaining a life insurance policy on his/her own life with the child named as beneficiary. See Bush v. Bush, supra; Kavanaugh v. Carraway, 435 So.2d 697 (Miss. 1983). In addition, we have held that it is not error for the trial court to require a parent to furnish an automobile and make mortgage payments as part of an award for the care and maintenance of children. Diamond v. Diamond, 403 So.2d 129 (Miss. 1981).
Of course, the foregoing items are not intended to be an exclusive listing, but are merely examples of the real distinction between regular child support and other types of payments for which a parent may become obligated under the terms of a valid child care and maintenance order under Sections 93-5-23 and 93-11-65. Turning to the present case, it should be made clear that Mr. Tedder sought reduction of regular child support payments. Mr. Tedder alleged without contradiction in pleadings filed in the trial court that he has given Amanda "additional monies to defray the expenses of her school costs... ." Obviously, this is "additional" to the court ordered child support. Nowhere in the record does it appear that Mr. Tedder is under a court ordered obligation to contribute to the cost of Amanda's college education. According to both parents, Amanda attends college on scholarship, loans and works part time to pay for college.
Therefore, the specific question this Court addresses in this case is whether Mr. Tedder can be required by court order to continue paying regular child support for the benefit of Amanda beyond her twenty-first (21) birthday, especially considering that she is regularly enrolled in college. Our resolution by necessity goes well beyond this case to answer the broader question of whether our courts can order any parent to provide for the care and maintenance of their child, such as by payment of child support, medical expenses, educational expenses, etc., after that child has attained the age of majority, or otherwise become emancipated.
First, this Court must establish once and for all what is the age of majority in this State for purposes of child care and maintenance orders. This question has been addressed and answered in Watkins v. Watkins, 337 So.2d 723 (Miss. 1976). In Watkins, this Court observed that the term "children" as used in §§ 93-5-23 and 93-11-65 describes "minor children." Id. at 724. We further recognized that the duty of care and maintenance under §§ 93-5-23 and 93-11-65 is not extended to adult children, and that the duty imposed on parents *770 to provide for their child ceases when the child reaches the age of majority. Id. Stated otherwise, it is well recognized that a parent is relieved of the legal duty to support their child once the child is emancipated, by attaining the age of majority or otherwise. See Pearson v. Hatcher, 279 So.2d 654, 656 (Miss. 1973); Pass v. Pass, supra.
Continuing, the court in Watkins stated that "it is common knowledge that in the context of this statute (93-5-23) the bench and bar have applied the term `children' to offspring who are less than twenty-one (21) years of age." 337 So.2d at 724. Consequently, "when Roy Watkins reached 21 years of age the decree for his support terminated and was thereafter inoperative." Id. Following Watkins, this Court holds that twenty-one (21) years is the age of majority in this State for purposes of child care and maintenance orders issued pursuant to §§ 93-5-23 and 93-11-65.
The trial court, therefore, correctly refused to order the continued payment of regular child support for Amanda's benefit beyond her twenty-first birthday. In the broader context, our courts have no authority under §§ 93-5-23 and/or 93-11-65 to require parents to provide for the care and maintenance of their child after the child becomes emancipated, by reaching the age of twenty-one (21), or otherwise, whichever occurs first. Of course, nothing we have said should be interpreted as foreclosing the enforceability of agreements by the parties providing for the post-emancipation care and maintenance of their children, whether those agreements are separate contracts, or have been incorporated into the divorce decree.
This Court fully appreciates that harsh results sometimes flow from actions taken by this Court, but this area of the law demands that we establish a clear line of demarcation. In the long run we trust that the establishment of such a line will prove beneficial to all interested parties. Beyond the age of emancipation, a parent's conduct in regard to the care and maintenance of their child must be controlled, not by courts, but by the parents' own conscience and sense of duty. The Chancellor's holding on this point is affirmed.

III.

WAS IT ERROR FOR THE TRIAL COURT TO ORDER THAT THE NONCUSTODIAL PARENT COULD CLAIM TWO CHILDREN FOR INCOME TAX PURPOSES?
This issue is one of first impression in this State, but it has received thorough discussion elsewhere. The discussion begins and ends with Section 152 of the Internal Revenue Service Code. Prior to January 1, 1985, the rule with which we are here concerned relating to dependency exemption "provided that unless otherwise specifically agreed to in writing by the parties or addressed in a court decree, the non-custodial parent could claim a dependency tax exemption if he or she paid more than $1,200 toward the support of a child in any calendar year and the custodial parent did `not clearly establish that he provided more for the support of such child during the calendar year than the parent not having custody.'" Wassif v. Wassif, 77 Md. App. 750, 551 A.2d 935, 939 (1989), citing IRC § 152(e)(2)(B)(i) and (ii) (1982).
The overwhelming majority of courts proceeding under the pre-January 1, 1985, version of the Revenue Code agreed that a state trial court had authority to allocate the dependency exemption to the non-custodial parent, and that a court order, standing alone, was effective to accomplish the transfer of exemption to the parent not otherwise entitled to it under § 152 of the Code. Wassif v. Wassif, supra; In re Marriage of Einhorn, 178 Ill. App.3d 212, 127 Ill.Dec. 411, 533 N.E.2d 29, 36-7 (1988); Hooper v. Hooper, 1988 WL 10082 (Tenn. App. 1988, unpublished); Lorenz v. Lorenz, 166 Mich. App. 58, 419 N.W.2d 770, 771 (1988); Lincoln v. Lincoln, 155 Ariz. 272, 746 P.2d 13, 16-7 (1987); Cross v. Cross, 363 S.E.2d 449, 456 (W. Va. 1987); Theroux v. Boehmler, 410 N.W.2d 354, 358 (Minn. Ct. App. 1987); Fudenberg v. Molstad, 390 N.W.2d 19, 20 (Minn.App. 1986); Morphew v. Morphew, 419 N.E.2d 770 (Ind. Ct. App. *771 1981); Neiderkorn v. Neiderkorn, 616 S.W.2d 529 (Mo. App. 1981); Grider v. Grider, 376 So.2d. 1103 (Ala. Civ. App. 1979); Pettitt v. Pettitt, 261 So.2d 687 (La. App. 1972).
Section 152 was not without its problems, however, and the law was amended by the Tax Reform Act of 1984 because of the many disputes that arose between divorced parents over who was entitled to the exemption in the first instance. Frequently, the Internal Revenue Service found itself an unwilling mediator in these disputes. The reasons for the amendments to § 152 are found in the legislative history of the Tax Reform Act:
Reasons for Change
The present rules governing the allocations of the dependency exemption are often subjective and present difficult problems of proof and substantiation. The Internal Revenue Service Becomes involved in many disputes between parents who both claim the dependency exemption based on providing support over the applicable thresholds. The costs to the parties and the Government to resolve these disputes is relatively high and the Government generally has little tax revenue at stake in the outcome. The committee wishes to provide more certainty by allowing the custodial spouse the exemption unless the spouse waives his or her right to claim the exemption. Thus, dependency disputes between parents will be resolved without the involvement of the Internal Revenue Service.
House Report No. 98-432, Part II, reprinted in 1984 U.S.Code Cong. & Admin.News 697, 1140.
The applicable part of § 152, as amended, provides as follows:
(e) Support test in case of child of divorced parents, etc. 
(1) Custodial parent gets exemption.  Except as otherwise provided in this subsection, if 
(A) a child (as defined in section 151(c)(3)) receives over half of his support during the calendar year from his parents 
(i) who are divorced or legally separated under a decree of divorce or separate maintenance,
(ii) who are separated under a written separation agreement, or
(iii) who live apart at all times during the last 6 months of the calendar year, and
(B) such child is in the custody of one or both parents for more than one-half of the calendar year,
such child shall be treated, for purposes of subsection (a) as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year (hereinafter in this subsection referred to as the "custodial parent").
Pursuant to the above stated rule, the custodial parent is automatically entitled to the exemption. There are, however, three exceptions to this rule of automatic allocation. See Treasury Regulation § 1.152-4T. The only exception applicable in this case is found at § 152(e)(2). That exception is as follows:
(2) Exception where custodial parent releases claim to exemption for the year.  A child of parents described in paragraph (1) shall be treated as having received over half of his support during a calendar year for the noncustodial parent if 
(A) the custodial parent signs a written declaration (in such manner and form as the Secretary may by regulations prescribe) that such custodial parent will not claim such child as a dependent for any taxable year beginning in such calendar year, and
(B) the noncustodial parent attaches such written declaration to the noncustodial parent's return for the taxable year beginning during such calendar year.
For purposes of this subsection, the term "noncustodial parent" means the parent who is not the custodial parent.
In applying the above stated rules, a clear majority of courts agree that the custodial parents always get the exemption *772 unless that parent releases his/her claim to the exemption for the particular tax year, and the other parent attaches such release to his or her tax return. These same courts agree further that, while a court order by itself is insufficient to accomplish an allocation to the noncustodial parent, state trial courts do retain the authority to allocate the dependency exemption by requiring the custodial parent to execute the necessary release. See, Wassif v. Wassif, supra; McKenzie v. Jahnke, 432 N.W.2d 556 (N.D. 1988); In re Marriage of Einhorn, supra; Fleck v. Fleck, 427 N.W.2d 355 (N.D. 1988); Hooper v. Hooper, supra; Pergolski v. Pergolski, 143 Wis.2d 166, 420 N.W.2d 414 (1988); Lincoln v. Lincoln, supra; Cross v. Cross, supra; Hamm v. Hamm, 1987 WL 16586 (Ohio Ct. App. 1987, unpublished); Fudenberg v. Molstad, supra.
As shown above, the general rule is easily applied. The more difficult question is whether, as a majority of courts have held, a state trial court has the power to order a custodial parent to execute the necessary waiver in favor of the noncustodial parent. In Wassif, supra, the court explored the legislative history of the amendments to § 152 and correctly noted that the "purpose of the new law was to relieve the IRS of acting as the mediator in disputes between divorced parents over exemptions." 551 A.2d at 939. Relying on Cross, supra, and concluding that the amendments were designed to eliminate the IRS's role as factfinder, the court in Wassif held that a state court's "allocation of the exemption to a noncustodial parent does not interfere with Congressional intent." 551 A.2d at 940.
Consequently, the court concluded "that a custodial parent may be ordered to execute the necessary waiver of a dependency exemption in favor of a non-custodial parent who is paying child support." Id. Incidentally, the trial court order in Wassif provided that the husband would be entitled to the exemption, but because there was no requirement that the wife sign the release, and because a court order alone is insufficient under the new law, the trial court on remand was instructed to order the wife "to execute a yearly waiver of the dependency exemption for one child in consideration of the child support she will be receiving." Id.
In McKenzie v. Jahnke, supra, the "dispositive issue on appeal is whether the amendment to 26 U.S.C. Section 152(e) by the Tax Reform Act of 1984, which created the presumption that the custodial parent was entitled to the income tax dependency exemptions, divested state courts of jurisdiction to award in their discretion the income tax dependency exemption to the non-custodial parent." 432 N.W.2d at 556. The McKenzie court concluded "that the trial court erred in its determination that it lacked the power to allocate the income tax dependency exemption by requiring the custodial parent to execute the necessary waiver to permit the non-custodial parent to claim the dependency exemptions." Id. at 557. The court relied exclusively on its prior decision in Fleck v. Fleck, supra.
In Fleck, the court concluded "that allocation of the income tax dependency exemption by the trial court is permissible," including the power "to order the custodial parent to execute consent forms assigning the income tax dependency exemption to the noncustodial parent" because such an exercise of authority does not interfere with or impact in any way on either the IRS or Congressional intent. 427 N.W.2d at 359, relying on Fudenberg v. Molstad, supra, and Pergolski v. Pergolski, supra.
The question of whether a trial court could order a custodial parent to sign a written declaration that he will not claim the dependency exemption under § 152 of the IRS Code was addressed as an issue of first impression in In re Marriage of Einhorn, supra. The court began by noting that the former § 152(e) was generally interpreted to allow state courts to allocate the dependency exemptions. 127 Ill.Dec. at 418, 533 N.E.2d at 36. The court concluded that the amendments to § 152 did not divest state trial courts of the authority to allocate the dependency exemptions to the appropriate parent. Id.
The court in Einhorn emphasized the concluding passage in the legislative history *773 of the amendments where it is stated that "dependency disputes between parents will be resolved without the involvement of the Internal Revenue Service." Id., 127 Ill.Dec. at 418-9, 533 N.E.2d at 36-7; 1984 U.S.Code Cong. & Admin.News 697, 1140. The court concluded the following from the legislative history:
"The intent of Congress in passing the amendment was to eliminate the Internal Revenue Service's ("IRS") role in fact finding determinations of which parent is entitled to the dependency exemption. It does not appear that the intent was to divest state courts of their authority to allocate exemptions. Under the amendment, the IRS does not need to resolve factual questions of how much support each parent provided as it did under the former section. The IRS is now only concerned with which parent is the custodial parent and whether he has signed a written declaration that he will not claim the exemption. (Fudenberg v. Molstad (Minn. Ct. App. 1986), 390 N.W.2d 19.) Accordingly, a state court's allocation of the exemption does not interfere with congressional intent."
127 Ill.Dec. at 419, 533 N.E.2d at 37.
Continuing, the court noted that to accomplish this allocation the "trial court must be able to order the custodial parent to sign a declaration that he will not claim the exemption," since a court order alone "is ineffective to transfer the exemption to the noncustodial parent." Id. In persuasive language, the court in Einhorn completed its holding by stating:
Additionally, the amendment itself contains no requirement that the declaration must be signed voluntarily and does not prohibit state courts to order the custodial parent to sign the declaration. We therefore hold that in dissolution of marriage proceedings, the trial court has within its discretion the power to allocate the tax dependency exemption by ordering the custodial parent to sign a declaration that he will not claim the exemption as required under section 152(e). Such an order must provide that the execution of the declaration is contingent upon the custodial parent's receipt of child support payments, if the noncustodial parent is ordered to make them. E.g., Cross v. Cross (W. Va. 1987), 363 S.E.2d 449.
Id.
In Hooper v. Hooper, supra, the Tennessee Court of Appeals visited the question of whether a state trial court can allocate the federal income tax dependency exemptions under § 152(e) by directing the custodial parent to execute the written declaration signifying his/her intent not to claim the exemption. Reviewing the legislative history, as have other courts, the Tennessee court held:
There is no dearth of cases wherein the custodial parent is not employed for wages and the non-custodial parent provides the entire economic support of the children; were we to adopt the appellant's argument, the exemption would be unavailable to the non-custodial parent, on the one hand, and of no benefit to the custodial parent, on the other, assuming the latter, as is frequently the case, has no taxable income. Other instances may be cited wherein the exemption, if not allocated, would be of little or no benefit to the custodial parent.
* * * * * *
There is nothing arcane in the law of domestic relations. Involved are raw and dramatically conflicting human emotions frequently fundamentally expressed, with the sensitive issue of the welfare of children often at risk. In recognition of this truth our laws have from the earliest times vested the trial judge with certain reviewable discretion with respect to issues of custody of children and their support. The appellant argues that the anomaly of a judicial mandate requiring her to execute a waiver of her statutory right is a contradiction in terms, and violative of her constitutionally protected property right in the dependency exemption. We are unable to agree with either thesis; the exemption is not a constitutionally guaranteed right, and Section 152(e) refers to a "written declaration in such manner and form as the Secretary *774 by regulations may prescribe". We agree with the appellee that in the context of a contested custody-support case the trial judge must have reviewable discretion to allocate the exemption. The judgment, of course, should provide that the annual execution of the release (see Form 8332) is contingent upon the receipt of all of the support payments. It need not be delivered except and unless the appellee has fully complied with the support requirement.
Hooper v. Hooper, supra (emphasis added).
The point raised in Hooper about the inequity of allowing the exemption to remain with the parent who stands to benefit least is worthy of elaboration. Where the resistance of the custodial parent prevents an agreement on the claiming of the dependency exemption, the trial court's inability to direct the custodial parent to sign the necessary waiver often will maximize the federal taxes to be paid to the detriment of the parents and the children.
For example, if the non-custodial parent is allowed the exemption, the non-custodial parent's federal income tax may be reduced by a greater amount than the custodial parent's tax would be if the custodial parent kept the exemption. Suppose that under the 1988 tax laws the custodial parent has adjusted gross income of $10,000.00, and the non-custodial parent has adjusted gross of $20,000.00. Also, the parties have one child and file returns as "single taxpayers." The tax computations would be as follows:

I. CUSTODIAL PARENT
 (A) Without Exemption:
 1. Adjusted Gross Income .................... $10,000.00
 2. Standard Deduction ..................... - 3,000.00
 __________
 7,000.00
 3. Exemptions(1) .......................... - 1,950.00
 __________
 4. Taxable Income ............................. 5,150.00
 5. TAXES OWED ............................................. $776.00
 (B) With Exemption:
 1. Adjusted Gross Income .................... $10,000.00
 2. Standard Deduction ..................... - 3,000.00
 __________
 7,000.00
 3. Exemptions(2) .......................... - 3,900.00
 __________
 4. Taxable Income ............................ 4,100.00
 5. TAXES OWED ............................................. $619.00
 _______
 Tax Savings to Custodial Parent ........................... $157.00
II. NON-CUSTODIAL PARENT
 (A) Without Exemption:
 1. Adjusted Gross Income .................... $20,000.00
 2. Standard Deduction ..................... - 3,000.00
 __________
 17,000.00
 3. Exemptions(1) .......................... - 1,950.00
 __________
 4. Taxable Income ............................ 15,150.00
 5. TAXES OWED ........................................... $2,276.00
 (B) With Exemption:
 1. Adjusted Gross Income .................... $20,000.00
 2. Standard Deduction ..................... - 3,000.00
 __________
 17,000.00
 3. Exemptions(2) .......................... - 3,900.00
 __________
 4. Taxable Income ............................ 13,100.00
 5. TAXES OWED ........................................... $1,969.00
 _________
 Tax Savings to Non-Custodial Parent ....................... $307.00
*775 III. TOTAL TAXES PAID TO IRS
 (A) Custodial Parent Has Exemption:
 1. Custodial Parent's Tax Payment ....................... $ 619.00
 2. Non-Custodial Parent's Tax Payment ................... 2,276.00
 _________
 $2,895.00
 (B) Non-Custodial Parent Has Exemption:
 1. Custodial Parent's Tax Payment ....................... $ 776.00
 2. Non-Custodial Parent's Tax Payment ................... 1,969.00
 _________
 $2,745.00
 Difference .............................................. $ 150.00

The above example is a simple yet logical reason why our trial courts should not be deprived of the authority to allocate the tax dependency exemptions by ordering the custodial parent to sign the required release where the equities of the case favor such action. In situations like the hypothetical above, a trial court's authority to allocate the exemption to the non-custodial parent reduces the amount of income tax to be paid to the federal government, and produces a tax saving to the non-custodial parent which exceeds the moderate increase in the tax liability of the custodial parent. This result will almost always prevail where, as is often the case, the custodial parent's adjusted gross income is less than the adjusted gross income of the non-custodial parent.
In this situation, the after-tax spendable income of the non-custodial parent is increased. This savings in tax liability could easily be channeled into increased child support or other payments, thereby rendering the custodial parent's after-tax spendable income, including child support or other payments, the same or better than if he/she had claimed the dependency exemption. To deny our trial courts the power to allocate the exemption gives the custodial parent the ability to punish the non-custodial parent by making the tax liability greater for the non-custodial parent; greater in fact than the savings the custodial parent stands to gain from claiming the exemption. The only real winner in such a situation is the federal government, while the real loser is the child.
Furthermore, in the present state of domestic relations actions, no one can seriously dispute the fact that our chancellors factor the parents' respective tax liabilities into the child support equation. If the parties cannot agree, the chancery court frequently reduces the amount of support or other payments due from the non-custodial parent because of the increased tax liability that results from the custodial parent's claiming of the exemption. To give them the authority as set forth above to allocate the exemptions would be merely to give express approval to what they already do indirectly.
The custodial parent in Pergolski v. Pergolski, supra, argued that the trial court had no authority to order her to sign the release forms assigning the exemption to the non-custodial parent. The court noted that the amendments to § 152(e), along with the legislative history, indicate that "congress provided for automatic allocation [of the dependency exemption to the custodial parent] to alleviate the burden on the IRS caused by factfinding determinations." 420 N.W.2d at 417. The court then concluded that the trial court "properly exercised its discretion by ordering [the custodial parent] to execute the consent giving the tax exemption to [the non-custodial parent]," because such action does interfere with Congressional intent nor does it involve the IRS in factfinding disputes. Id., relying on Fudenberg v. Molstad, supra.
In Lincoln v. Lincoln, supra, the non-custodial parent complained of the trial court's failure to award him the federal dependency exemption for both children. The court noted that the "financial impact of the allocation of the exemption" has been and remains an important consideration for the court in a dissolution of marriage action. 746 P.2d at 17. In Lincoln, the non-custodial parent "was ordered to pay more than one-half the children's support ... to maintain health insurance for the children and to pay all uninsured medical and dental expenses. He was also ordered *776 to maintain life insurance on his life for the children's benefit of at least $500,00." Id. The custodial parent was unemployed at the time of trial.
Addressing the trial court's failure to allocate the exemption, the court stated that "[e]ntitlement to the dependency exemption is an important consideration in ascertaining the resources of the parties and in making a determination as to amount of child support." Therefore, the court held that, "in Arizona, a custodial parent may be ordered to execute the necessary waiver of exemption in favor of a non-custodial parent who is paying child support in appropriate cases." Id. The trial court's failure to do so in this case was held to be an abuse of discretion justifying a remand of the case to the trial court.
While not expressly stated in Lincoln, it is quite reasonable to infer from their decision a concern identical to the one later expressed in Hooper v. Hooper; that is, "the exemption would be unavailable to the non-custodial parent, on the one hand, and of no benefit to the custodial parent, on the other, [because] the latter, as is frequently the case, has no taxable income." Hooper, supra.
The case of Cross v. Cross, supra, is one of the premier cases to decide this issue. The court began its discussion by noting that state courts could allocate the exemption under the former version of § 152. Looking at the amended version and the accompanying legislative history, the court in Cross rejected the argument that the amendments to § 152(e) were designed "to confer, by federal law, a collateral financial benefit upon the custodial parent." Instead, "[w]hat the new law sought to achieve was certainty in the allocation of the dependency exemption for federal tax administration purposes." 363 S.E.2d at 457 (emphasis in original).
"The new statute is entirely silent concerning whether a domestic court can require a custodial parent to execute a waiver, and this silence demonstrates Congress's surpassing indifference to how the exemption is allocated as long as the IRS doesn't have to do the allocating."
Id. (emphasis in original).
The court in Cross ultimately arrived at the conclusion that nothing in the amendments to § 152(e) "precludes a power in our trial courts to award the dependency tax exemption as an integral part of setting child support by ordering the custodial parent to execute the waiver required by the IRC" 363 S.E.2d at 458 (emphasis in original). The basis for this conclusion is found in language worth repeating verbatim:
In this regard, the U.S. Supreme Court has articulated two tests for determining whether there is a conflict between a federal statute and a state law. The first of these tests provides that a conflict exists when "compliance with both federal and state regulations is a physical impossibility . .." Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). The second test provides that a conflict will be found when a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives on Congress." Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941).
Our holding today concerning a court's power to order a custodial parent to waive the dependency exemption meets both tests. IRC § 152(e) seeks only certainty; it requires a waiver to allocate the dependency exemption to the non-custodial parent and a court ordered waiver is as acceptable as any other. The second test relating to congressional intent is also met: the amended IRC § 152(e) is designed to ease the IRS's administrative burden and not to rearrange economic benefits between divorced parents.
None of this discussion, however, is meant to imply that the new IRC § 152(e) does not provide valuable benefits to custodial parents even though providing those benefits was not its primary purpose. In the 94 percent of all divorces that are concluded by voluntary *777 settlement, the custodial parent is given a new bargaining chip that, depending upon the economic circumstances, may be of significant value. Furthermore, when the dependency exemption is allocated to the non-custodial parent on a year-to-year basis the custodial parent must sign the waiver to allow the non-custodial parent to take the exemption. This simple mechanical requirement provides the custodial parent with an opportunity to collect back support payments every April 15th. In light of the low level of compliance with alimony and child support awards, this scheme hardly seems ill-conceived from points of view other than the IRS's.
* * * * * *
The facts of life are that income tax exemptions are valuable only to persons with income, and up to a certain point, the higher the income the more valuable exemptions become because of the progressivity of the federal income tax. In this regard, it is to be remembered that the federal government is not providing every custodial parent with a cash grant under IRC § 152(e). Rather, IRC § 152(e) provides an economic benefit that is of significantly greater value to a parent with income than it is to a parent without income. Consequently, it seems only reasonable that a trial judge should allocate the dependency exemption to the parent in the highest tax bracket, and then enhance (or reduce) the value of the cash child support payments to offset the value of the exemption ... Certainly what can be done indirectly under any reading of the law by a circuit judge  namely, to adjust the award of child support depending on whether a waiver of the dependency exemption is made by the custodial parent,...  can be done directly.
This, however, is not to say that the custodial parent loses any of the benefits rightly conferred upon her by the new IRC § 152(e). When the circuit court orders that a custodial parent execute the waiver of the dependency exemption in favor of her former spouse, execution of the waiver is dependent upon a non-custodial parent's having paid his court-ordered child support. This gives the custodial parent leverage because she can refuse to execute the waiver in the event of non-payment, which forces the non-custodial parent to take her back to court to force the execution of the waiver, at which time she may raise the back payment issue.
Finally, the Minnesota Court of Appeals held in Fudenberg v. Molstad, supra, that Minnesota courts are "not precluded by federal law from allocating the federal income tax dependency exemption to the non-custodial parent" by requiring execution of the release form. 390 N.W.2d at 21-22. The court wisely noted that the execution of waiver should be "contingent upon receipt of support payments," and "[w]hether support has been paid will be readily ascertainable because the waiver need not be signed until the noncustodial parent's federal return for the completed tax year is filed." Id. at 21. The court also noted that the "effect of awarding the exemption to the noncustodial parent will be to increase the income to which the support guidelines apply ... because the dependency exemption will be a tax benefit to the obligor, decreasing his or her federal income tax ..." Id.
All of the above cases present compelling reasons for allowing the trial courts of this state to allocate the dependency exemption under § 152(e) by requiring the custodial parent to execute the necessary release form. Notwithstanding, we would be remiss if we did not point out the decisions from other courts that are not in total agreement with the majority position. One such case is Hughes v. Hughes, 35 Ohio St.3d 165, 518 N.E.2d 1213 (1988), cert. denied, ___ U.S. ___, 109 S.Ct. 124, 102 L.Ed.2d 97 (1988), where the sole issue was whether the amendments to § 152(e) "precludes domestic relations courts ... from awarding the dependent child tax exemption to the noncustodial parent in a divorce proceeding." 518 N.E.2d at 1214.
The court in Hughes reviewed the amendments and legislative history to *778 § 152(e), and concluded that a domestic relations court in Ohio has the power to allocate the dependency exemption. However, the holding was "necessarily limited" because the court refused to hold that a trial court could order a custodial parent to execute a waiver of the exemption. Id. at 1215-16. Strangely, the court held that its power was "limited to a determination of the validity of the court's [allocation] order, and the consequences which inure to the parties therefrom." Id. at 1216.
In a unique twist of reasoning, the Court held that the trial court could order the allocation, but could not order the waiver. Moreover, the court order alone would be insufficient to transfer the exemption to the non-custodial parent. Thus, the court could "only speculate as to the determination the Internal Revenue Service will make" if the custodial parent should "choose to disobey the court order [awarding the exemption to the non-custodial parent] ... and refuse to execute the exemption declaration. If, in such case, the Internal Revenue Service follows the presumption set forth in Section 152 and awards the exemption to ... the custodial parent, then one of [the non-custodial parent's] options, in addition to appeal of the IRS ruling, would be a contempt of court action in state court against [the custodial parent], seeking enforcement of the court order." Id.
This analysis, however, "implicitly [holds] that a domestic relations court may, under threat of contempt, force one to `release' his or her right to an exemption." 518 N.E.2d at 1218 (Wright, dissenting). In our view, the Hughes court unnecessarily sidesteps a falsely perceived issue over whether the § 152 release must be as voluntary as the release of a constitutional right. We perceive no such requirement, and accept that our courts are empowered to do directly what the Hughes opinion would have them do indirectly.
The only case that stands squarely opposed to the majority position is McKenzie v. Kinsey, 532 So.2d 98 (Fla.App.1 Dist. 1988), which held simply that a court order requiring the wife to execute the necessary waivers was ineffective because "entitlement to the dependency exemption depends on the provisions of the Code and agreement of the parties ..." 532 So.2d at 100, note 3. Since the "custodial parent did not voluntarily sign a written declaration releasing her right to claim the parties' children as dependent's," the trial court's order would be reversed. Id.
There are other cases that are sometimes cited in opposition to the majority, but those cases are generally distinguishable. Two such cases are Gerardy v. Gerardy, 406 N.W.2d 10 (Minn. Ct. App. 1987) and Theroux v. Boehmler, supra. The distinguishing feature of those cases is that in neither case was the issue of court ordered waiver involved, and therefore, neither case conflicts with Minnesota's adoption of the majority position in Fudenberg v. Molstad, supra. Theroux, 410 N.W.2d at 358. The record is clear in both Gerardy and Theroux that the trial court did not order a waiver but instead attempted to allocate the exemptions by judicial fiat alone. Id. In such a situation, federal law must be strictly followed; however, a trial court does have the authority as in Fudenberg to "invoke its equitable powers to require a waiver to safeguard the economic well-being of the family." Id. The upshot of Gerardy and Theroux is that when a court wishes to allocate the exemptions under the amended version of § 152(e), it must follow the Code and obtain the necessary waiver because a court order alone is no longer sufficient. Id.
In Jensen v. Jensen, 753 P.2d 342 (Nev. 1988), the court reversed a district court's order requiring a custodial parent to execute the necessary declaration under § 152(e). However, the court merely proceeded to do indirectly what it refused to do directly; that is, the court held that "coercive equitable relief [in the form of ordering waiver of exemptions] is appropriate only when a legal remedy is inadequate." 753 P.2d at 345. Consequently, the court authorized the trial court to "achieve a similar economic result, as a matter of law, by merely adjusting the amount of alimony Donald would have to *779 pay Barbara; ..." Id. Again, we perceive no issue over the voluntariness vel non of the release form which would cause us to use the back door instead of the front.
In Lorenz v. Lorenz, supra, the court held that the amendments to § 152 "divested state courts of jurisdiction over which party could take the exemptions." Id., 419 N.W.2d at 771. Using the backdoor approach, however, the court remanded the case for the trial court to consider the "impact of the new IRS custodial parent rule, 26 U.S.C. § 152(e), on the ability of plaintiff to pay the current rate of child support and whether or not the impact of this change in the federal tax law should be reflected by a consequent modification of the amount of child support required to be paid by plaintiff." Id. at 772. See also, Varga v. Varga, 173 Mich. App. 411, 434 N.W.2d 152 (1988).
Fullmer v. Fullmer, 761 P.2d 942 (Utah App. 1988), can only be read as holding that a court order standing alone is insufficient to award the exemption under the amended version of § 152(e). Id. at 950. No issue of waiver was involved in Fullmer, and it held only that courts "do not have the authority to grant the exemption contrary to the provisions of the Internal Revenue Code." Id. We could not be more in agreement with this statement because the Code requires that the custodial parent release the claim to the exemption. We simply conform our decision to the Code by authorizing the trial court to order the custodial parent to execute the necessary release.
Finally, Davis v. Fair, 707 S.W.2d 711 (Tex. App.  Eastland 1986), may fairly be interpreted as holding no more than that a "trial court [is] without authority to disregard the statute and to thereby grant the exemption to" the non-custodial parent. Id. at 718. The issue of whether a court could put the non-custodial parent within one of the exceptions to the general rule by ordering the custodial parent to sign the waiver was not addressed. The court did go to great lengths, however, to explain the proper operation of the new § 152(e). The distinguishing features of Fair have been best described by the West Virginia Supreme Court of Appeals in Cross v. Cross, supra, as follows:

Davis v. Fair, is an extremely formalistic opinion that strains at a gnat but swallows a camel. The Davis court held that the trial court could adjust child support to reflect the lost value of the dependency exemption, but could not allocate the exemption to the non-custodial parent because there was no express authority in the Internal Revenue Code allowing it.
Indeed, under the new IRC § 152(e) a state court does not have the power to allocate the exemption simply by court order alone (as it could have done before the 1984 amendment), but it does have the equitable power to require the custodial parent to sign the waiver. In this regard, what the Davis court missed is that there is no prohibition  express or implied  on a state court's requiring the execution of the waiver, and because state court allocation of dependency exemptions has been custom and usage for decades, it is more reasonable than not to infer that if Congress had intended to forbid state courts from allocating the exemption by requiring the waiver to be signed, Congress would have said so.
* * * * * *
In a peculiar way, perhaps, Davis v. Fair, supra, is squarely on point. In Davis, the court held that although a trial judge could not allocate the dependency exemption, he could reduce child support to reflect the value of the dependency exemption. If that is so, a court can do indirectly what [the custodial parent in Cross] would prohibit a court from doing directly. Take away $100 a month from Mrs. Cross's child support payments and she'll gladly execute a waiver to have the $100 a month restored; in her tax bracket the dependency exemption is nearly worthless.
Cross, 363 S.E.2d at 458-59.
The state of domestic relations is often as described in Cross. We are not prepared to retreat in the face of what we perceive to be illusory issues of voluntariness *780 under § 152(e) of the Internal Revenue Code. This Court, therefore, aligns itself with the majority of courts which empower their state trial courts to allocate the dependency exemption in divorce cases by requiring the custodial parent to execute the necessary release in favor of the non-custodial parent. The decision to allocate is to be made on a case-by-case basis in the exercise of the chancellor's wide discretion, and where the equities of the case require an allocation and order of waiver, the custodial parent's obligation to execute the release is to always be contingent on the receipt of all due and owing payments related to the care and maintenance of the dependent children. Further, it is imperative that our chancellors bear in mind that a court order alone is insufficient; they must also order the custodial parent to execute the necessary release, which in turn must be attached to the non-custodial parent's tax return for the completed year. We also recommend that the waiver of exemptions be executed only on a year-to-year basis, even though the Code allows alternatives.
Turning finally to the instant case, the Chancery Court assigned the tax exemptions for Darren and Christopher Tedder to Lee Tedder for 1986, and succeeding years. However, the Chancellor did not order the mother to sign a waiver where necessary. Notwithstanding, it appears from the record that Lee Tedder is automatically entitled to the dependency exemption for Darren for 1986 because Darren was in the custody of his father for the greater part of 1986, thereby rendering Lee Tedder the custodial parent of Darren for 1986. As to Christopher for 1986, the mother will be required to execute a release since she was the custodial parent of Christopher for 1986. If, in fact, Lee Tedder was not the custodial parent of Darren for 1986, then the mother is required to execute the necessary release for that exemption as well.
In deciding this case, we presume that the Chancellor below intended to allocate the dependency exemptions in accordance with § 152(e). Therefore, this Court affirms his allocation of the exemptions for Darren and Christopher to Lee Tedder as within his discretion. However, to bring his order into compliance with the requirements of § 152(e), this Court adds the following order: For the year 1986, the custodial parent of Christopher (Sara Tedder Nichols) is required to execute the necessary release in favor of Lee Tedder, subject of course to Lee Tedder having made all child care and maintenance payments in full for 1986; as to Darren for the year 1986, Sara Tedder Nichols must execute a release of the exemption in favor of Darren only if she was the custodial parent for that year; for years succeeding 1986, Sara Tedder Nichols is required to execute the necessary releases in favor of Lee Tedder for each year in which she is considered to be the custodial parent of Darren and/or Christopher, subject to Lee Tedder's compliance with his support obligations. Obviously, no release is necessary where, Lee Tedder is deemed to be the custodial parent of either or both children for a particular year. Finally, the orders relating to dependency exemptions obviously terminate as each child loses his dependent status as determined by the Internal Revenue Code.
If in the future the Internal Revenue Service refuses to honor a non-custodial parent's claim of dependency exemption which that parent acquired pursuant to court order, then the non-custodial parent has at least two avenues of recourse, other than just accepting the decision of the IRS. The parent may appeal such a ruling to the IRS, or that parent may petition the appropriate chancery court for modification of support obligations based on a change in circumstances. This Court states no opinion on whether the modification, if sought, should be granted; we only state that a denial by the IRS of the court awarded dependency exemption will constitute a change in circumstances justifying the parent in seeking relief by way of modification.

IV.

WAS IT ERROR TO ALLOW THE FATHER CREDIT ON AN EXISTING JUDGMENT FOR CHILD SUPPORT AND ARREARAGE?
*781 As noted earlier, the father owed over $5,200 in support arrearages pursuant to a decree entered July 15, 1983. With interest, the figure amounted to almost $6,700. Pursuant to the terms of the December 19, 1986, decree, the father was allowed a credit for any support paid since Amanda had reached the age of 21 and also received credit for any amounts of support paid since Darren had moved into the father's home. The total credit at the time of the 1986 decree was $558. The chancery court allowed a credit for $558 against the total figure of almost $6,700 owed by the appellee to the appellant.
In Schilling v. Schilling, 452 So.2d 834 (Miss. 1984), this Court held:
When a parent is ordered to pay a specified amount periodically for the benefit of more than one child, the emancipation of one child does not automatically reduce the liability of the parent for the full amount.
Id. at 836. Thus, Amanda's emancipation and the fact that Darren moved into the father's home does not automatically grant him the right to receive a credit for child support payments made after that point in time. However, under proper circumstances, the father should be allowed the opportunity to prove before a trial judge that he should receive such a credit. In the case sub judice, the father did just that by filing the petition to modify.
Child support is given to the custodial parent strictly for the benefit and protection of the child. Hailey v. Holden, 457 So.2d 947, 950 (Miss. 1984). In Alexander v. Alexander, 494 So.2d 365 (Miss. 1986), this Court recognized the injustice of allowing the mother to continue to receive child support payments for a child who no longer lived with her, but in fact lived with the child's father.
In our opinion, when the custodial parent received full child support during the time she had custody of the child, did not complain when the child moved in with the other parent, and accepted this arrangement for twenty months with child support being paid directly to the child, the parent paying the support is entitled to full credit for all support paid to the child.
Id. at 368.
The situation in Alexander closely resembles the present one. Once Darren moved in with the father, there was no logical reason for child support payments to continue to be made to the mother on Darren's behalf. The father should receive full credit for those payments. Based on this Court's decision under the first assignment of error, it was also proper for the father to receive credit for any payments made on Amanda's behalf once she reached the age of twenty-one. Therefore, it is the opinion of this Court that there is no merit to this assignment of error as presented by the mother.

V.

WAS IT ERROR TO DENY THE MOTHER'S COUNTERCLAIM TO RESTORE THE FATHER'S CHILD SUPPORT OBLIGATIONS TO THE AMOUNT ESTABLISHED UNDER THE ORIGINAL DIVORCE DECREE?
It should be noted initially that the findings of the chancery court concerning findings of fact, particularly in the areas of divorce and child support, will generally not be overturned by this Court on appeal unless they are manifestly wrong. Devereaux v. Devereaux, 493 So.2d 1310, 1312 (Miss. 1986); Carr v. Carr, 480 So.2d 1120, 1122 (Miss. 1985). Thus, any examination of child support awards and adjustments should be made with this standard in mind.
The original divorce decree entered on November 11, 1981, required that the appellee pay $400 per month as child support. By the time the second decree was entered on July 15, 1983, the appellee was over $5,000 in arrears on this child support obligation. In the same 1983 decree which awarded the appellant a judgment in the amount of approximately $5,200, plus interest, the appellee was also granted a downward adjustment in child support obligations to $350 per month. The downward adjustment was to be in effect "until further orders of [the] court." The decree further held "that the reduction in child *782 support shall only be temporary until the financial condition of the defendant improves." The main reason for the downward adjustment in child support figures was the fact that the appellee's income in 1983 amounted to just over $5,000. However, by the time of the 1986 hearing, the appellee's income had risen to approximately $13,000, more than doubling in a two year period of time. It would seem that if all other circumstances concerning the children remained the same, the appellee should be required to resume payment of the original $400 per month child support obligations.
However, as discussed under previous assignments of error, there had been changed circumstances in this case, namely that Amanda had reached the age of 21 and that Darren had moved into the appellee's home. At the very least, the appellee's child support obligation should be reduced for the simple reason that Darren was living with his father.
Therefore, it seems obvious that the appellant's claim that she is entitled to $400 child support payments pursuant to the terms of the original divorce decree in 1981 is erroneous. An appellate court is not at liberty to overturn decisions of the chancellor unless they are manifestly in error. This Court cannot say that under these facts the chancellor was manifestly in error in refusing to reinstate the original amount of child support payments. Therefore, it is the opinion of this Court that the mother's final assignment of error is without merit.
For the foregoing reasons, it is the opinion of this Court that the decision of the chancery court should be affirmed in all aspects.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.