# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00438-COA

| | |
|---|---|
| **EDWIN CLYDE NEELLY, IV** | **APPELLANT** |
| **v.** | |
| **LISA LEATHERMAN NEELLY** | **APPELLEE** |

| | |
|---|---|
| DATE OF JUDGMENT: | 01/30/2015 |
| TRIAL JUDGE: | HON. MILLS E. BARBEE |
| COURT FROM WHICH APPEALED: | LEE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOE M. DAVIS |
| ATTORNEYS FOR APPELLEE: | JASON D. HERRING |
| | MICHAEL SPENCER CHAPMAN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | GRANTED CITATION FOR CONTEMPT; DENIED MOTION TO MODIFY DIVORCE DECREE |
| DISPOSITION: | AFFIRMED - 10/11/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., WILSON AND GREENLEE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1. Edwin Neelly appeals the Lee County Chancery Court's order finding him in contempt of a divorce and separation agreement for failure to reimburse his ex-wife for certain expenses related to their minor children and denying his request to modify the original decree to allocate to him tax-exemption benefits. Finding no error, we affirm.

## FACTS AND PROCEEDINGS BELOW

¶2. Edwin and Lisa Neelly divorced in 2005. The divorce decree incorporated a Separation and Property Settlement and Child Support and Custody Agreement

("Agreement") relating to their four minor children. The Agreement provided in part that Edwin be responsible for one-half of all uncovered medical care (including dental and optical), one-half of automobile expenses for the minor children, and all reasonable college expenses.

¶3.     In May 2012, the court issued an order finding Edwin in contempt of certain provisions of the Agreement. Edwin was ordered in part to reimburse Lisa for $3,500 in medical and automobile expenses, to provide proof of life insurance, and to provide the minor children a fuel card or a credit card for the exclusive use of fuel. By agreement of the parties, the contempt order also directed that Lisa send the bills for quarterly reimbursement to Edwin through his attorney at the time, rather than send them directly to Edwin. The purpose of this arrangement was to minimize the need for Lisa and Edwin to communicate with each other, given the strained nature of their relationship.

¶4.     Lisa filed a second motion for contempt in January 2013, asserting that Edwin had accrued more than $17,000 in arrearage for failure to reimburse his share of qualified expenses. Edwin counter-petitioned, requesting in part that the trial court modify the original Agreement to allow him to claim certain tax benefits related to the dependent children.

¶5.     The court held a hearing.[1] Edwin testified that he paid all bills that were forwarded to his former attorney. The former attorney testified that she understood her role as

---

[1] At the time of the 2013 motion for contempt, the original chancellor, Talmage Littlejohn, was no longer sitting on the bench. The Mississippi Supreme Court appointed senior status judge Mills Barbee to preside after multiple other local chancellors recused due to professional or personal relationships with the parties.

intermediary to include screening whether the expenses submitted by Lisa were reasonable and in accordance with the Agreement. Lisa submitted as evidence a list of the unreimbursed expenses along with receipts. Edwin had been personally sent a copy of these expenses and acknowledged having access to the record of them. The submitted medical and automobile expenses totaled $19,577.67, with $9,788.84 constituting the half Edwin would owe. The college expenses included $953.08 for a computer and $6,700 for the couple's freshman daughter renting an apartment off of campus. Edwin expressed dissatisfaction that he was not involved in the decision-making process of certain expenses, such as the purchase of a $6,400 vehicle, the $935.08 laptop, and the cost of the freshman daughter renting an apartment instead of living on campus or commuting from home. He also testified that modification of the original order to permit him to claim some of the minor children as dependents on his taxes would help him pay for his reasonable share of these expenses.

¶6.     The court found Edwin to be in contempt and established an instalment timeline for him to pay the $14,073.92 arrearage. The court found him liable for only one-half of the off-campus apartment expense, instead of for the whole amount. Edwin's request for modification to receive the tax benefits was denied. The court vacated the provision of the previous contempt order directing that bills be sent to Edwin through his former attorney.

¶7.     Edwin appeals.

## DISCUSSION

¶8.     An appellate court will not disturb a chancellor's findings related to domestic matters unless they are manifestly wrong or clearly erroneous, or the chancellor applied an erroneous

3

legal standard. *Louk v. Louk*, 761 So. 2d 878, 882 (¶8) (Miss. 2000).

I. **The trial court did not abuse its discretion in denying Edwin's request for modification relating to tax benefits.**

¶9.    Edwin argues that the chancellor erred in refusing to modify the original agreement to permit him to claim some of the children as dependents on his tax return. He cites largely to the Mississippi Supreme Court's decision in *Nichols v. Tedder*, 547 So. 2d 766 (Miss. 1989), in which the court held that a chancellor has the authority to order a custodial parent to execute a tax-dependency waiver in favor of the noncustodial parent. The court held:

> The decision to allocate [the tax exemption to the noncustodial parent] is to be made on a case-by-case basis in the exercise of the chancellor's wide discretion, and where the equities of the case require an allocation and order of waiver, the custodial parent's obligation to execute the release is to always be contingent on the receipt of all due and owing payments related to the care and maintenance of the dependent children.

*Id*. at 780. The court referenced with approval examples from other jurisdictions of when allocation to the noncustodial parent is appropriate, emphasizing that income-tax exemptions are typically most valuable to the party in the higher tax bracket and can be worthless to a party with little or no income. *Id*. at 776. Chancellors can construct an order for child support that equitably takes into consideration which party received the benefit of the tax advantage, while maximizing the overall income available to benefit the child. *Id*; s*ee also Louk*, 761 So. 2d at 884 (¶17) (enumerating various factors chancellors can consider when allocating tax exemptions, including noneconomic contributions by the custodial parent, the value of the exception at the marginal tax rate of each parent, the income of each parent, the age of the child and how long the exemption will be available, the percentage of the cost of

supporting the child borne by each parent, and the financial burden assumed by each parent under the property settlement in the case).

¶10.    Here, Edwin is not challenging the allocation of tax exemptions with a direct appeal from a chancellor's original decree. When the request to transfer a tax exemption is pursuant to a request to modify a prior decree, a material and adverse change in circumstances must occur to transfer to one parent a tax exemption that was previously awarded to the other parent. *Peters v. Ridgely*, 797 So. 2d 1020, 1024 (¶18) (Miss. Ct. App. 2001). For example, in *Peters*, this Court affirmed the modification of an original decree transferring tax deductions to the custodial parent following a significant and unexpected increase in medical expenses for minor children coupled with the custodial parent's need to purchase medical insurance due to the noncustodial parent's failure to maintain a policy. *Id*. at 1024-25 (¶20). The noncustodial parent had also "abused the dependent deductions in a manner [which violated] Internal Revenue Service regulations." *Id*.; *see also Laird v. Blackburn*, 788 So. 2d 844, 852 (¶14) (Miss. Ct. App. 2001) (affirming tax-allocation modification where chancellor took into consideration various considerations including party's employment status).

¶11.    Outside of Edwin's testimony that the tax benefit would help him pay some of his arrearage, the record does not reflect that Edwin argued or presented evidence below that any of the parties' circumstances had materially changed so that "equity requires" allocation to him of one or more of the tax exemptions under the principles of *Nichols* and *Louk*. While Edwin states that evidence was never presented to the trial court of Lisa's financial condition

due to her failure to disclose her Uniform Chancery Court Rule 8.05 form, the record does not reflect that Edwin ever requested an 8.05 form from her or that he called the matter to the court's attention. Edwin's accrued arrearage stemming from the agreed terms and foreseeable circumstances of the original decree does not constitute a material change in circumstances warranting transfer of the tax exemption.[2]

> **II.    The trial court did not err in finding Edwin in contempt for failure to reimburse his share of qualified expenses related to the minor children.**

¶12.    Edwin argues that Lisa's refusal to involve him in the decision-making process on major expenses violates an implicit duty of sharing joint legal custody. In *Laird*, this Court affirmed the chancellor's refusal to order the noncustodial parent to reimburse the custodial parent for various expenses incurred on behalf of the child, including clothing, school supplies, and a bicycle. *Laird*, 788 So. 2d at 851 (¶14). In that case, the original decree required consultation and mutual agreement between the parties prior to incurring expenses for education and similarly important matters. *Id*. The parties did not communicate concerning the expenses, and many of the expenses were duplicated between the two households. *Id*.

¶13.    Here, the Agreement between Lisa and Edwin does not explicitly require consultation

---

[2] And allocation of a tax exemption to Edwin would not immediately assist him in paying the arrearage under the *Nichols* rule that the custodial parent has no legal obligation to sign over the exemption waiver until the noncustodial parent has paid "all due and owing payments related to the care and maintenance of the dependent children." *Nichols*, 547 So. 2d at 780.

and mutual agreement between the parties prior to incurring the expenses. With the exception of reasonable college expenses, each expense is divided equally between the two parties. The chancellor heard testimony concerning whether each expense was reasonable, and held in Edwin's favor that he did not have to pay the entirety of the expense of his freshman daughter renting an apartment off-campus, even though the original decree provided that Edwin would be solely responsible for all reasonable college expenses. We cannot find that the chancellor abused his discretion in finding Edwin in contempt and ordering him to reimburse the qualified expenses of $14,073.92.

¶14. Finally, in the initial 2012 contempt order, the court specified that Edwin provide a fuel card or a credit card designated exclusively for fuel expenses. The chancellor found Edwin in contempt of this provision and ordered him to come into compliance. Edwin argues that the provision of the contempt order requiring him to provide a fuel card up front is impermissible because it is outside of the terms of the original Agreement requiring him generally to pay for one-half of the automobile expenses. He argues that fuel is a "transportation" expense rather than an "automobile" expense. We agree with Lisa that the cost of fuel is within the concept of "automobile expenses" and that the trial court was within its authority to specify that Edwin pay for his half of the fuel expenses by this method of providing either a prepaid fuel card or a credit card designated exclusively for the purchase of fuel.

**CONCLUSION**

¶15. The chancellor did not abuse his discretion in determining that Edwin was in contempt

7

of the Agreement. Edwin failed to demonstrate a material change in circumstances that would warrant modification of the original order to grant him tax-exemption benefits. Finding no error, we affirm.

¶16.   **THE JUDGMENT OF THE CHANCERY COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, FAIR, JAMES AND WILSON, JJ., CONCUR. IRVING, P.J. CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**