741 So.2d 351 (1999)
Clyde D. KILGORE, III, Appellant,
v.
Juliette E. FULLER, Appellee.
No. 97-CA-01190-COA.
Court of Appeals of Mississippi.
May 4, 1999.
*352 J. Mack Varner, Lee Davis Thames, Jr., Vicksburg, Attorneys for Appellant.
Travis T. Vance, Jr., Vicksburg, Attorney for Appellee.
BEFORE THOMAS, P.J., DIAZ, AND SOUTHWICK, JJ.
SOUTHWICK, J., for the Court:
¶ 1. Clyde D. Kilgore, III, appeals from a judgment of the Warren County Chancery Court that increased his child support obligation from $350 to $450 per month. Mr. Kilgore claims that the chancellor erred by ordering him to pay more than required by the statutory guidelines, especially in light of a decrease in his income. We agree that there has been such a significant deviation from the guidelines as to constitute an abandonment of them altogether. We reverse and remand.

FACTS
¶ 2. Clyde D. Kilgore, III, and Juliette E. Fuller were married on July 23, 1977. They had one child, Ashley, born May 29, 1984. Three years later, in 1987, Mr. Kilgore and Ms. Fuller were divorced. At the time of the divorce, Mr. Kilgore was ordered to pay $350 per month in child support, to provide health insurance for his *353 daughter, and to obtain a life insurance policy on his life naming his daughter as beneficiary.
¶ 3. On July 1, 1997, Ms. Fuller filed a motion for modification of child support, requesting an increase due to a material change in circumstances, specifically, the increased costs in raising a teenage daughter as opposed to a toddler. Following a hearing held on August 19, 1997, the chancellor awarded Ms. Fuller an increase of $100 per month. Mr. Kilgore appealed.

DISCUSSION
¶ 4. Decisions regarding modification of child support are within the discretion of the chancellor. Reversal is permitted only if there is manifest error in findings of fact or an abuse of discretion. Powell v. Powell, 644 So.2d 269, 279 (Miss. 1994). "The process of weighing evidence and arriving at an award of child support is essentially an exercise in fact-finding, which customarily significantly restrains this Court's review." Clausel v. Clausel, 714 So.2d 265, 266-67 (Miss.1998). Using these standards, we review the chancellor's action here.

I. Was there a material change in circumstances?
¶ 5. Ms. Fuller sought the increase in support due to the increased expenses attendant to raising a teenage daughter as opposed to a toddler. She claims that Ashley now requires more costly adult clothing, more food, and is active in extracurricular activities which entail additional fees and expenses. These extracurricular expenses total $150 per month. As set out in the chancellor's opinion, these latter expenses arise out of participation in gymnastics, skating, softball, basketball, track, YMCA, Girls Club, swim lessons, and boating lessons.
¶ 6. "A child support award can be altered if it can be shown that there has been a substantial or material change in the circumstance of one or more of the interested parties: the father, the mother, and the child or children, arising subsequent to the entry of the decree to be modified." Overstreet v. Overstreet, 692 So.2d 88, 92 (Miss.1997). The general statement is that a material change in circumstances that necessitates the modification of child support must not have been reasonably foreseeable at the time of the divorce. However, the supreme court has never required that the natural growth of a child and the inevitable increased expenses that arise must be anticipated in the initial child support award for a toddler. That would be unfair to the supporting parent and potentially to the custodial one. To require under the foreseeability test that the initial child support award already include amounts for the child's ten-year-later foreseeable expenses would greatly increase the initial child support amount. Though increased expenses may be foreseeable, their amount is not. As the Mississippi Supreme Court has recognized, "[r]are is the child whose financial needs do not increase with age." Varner v. Varner, 588 So.2d 428, 433 (Miss.1991). Conversely, the Solomonic chancellor does not likely exist who can foresee in the initial support award what allowance is to be made for a child ten years in the future. That must be left for modification proceedings.
¶ 7. Because of Ashley's increased age and proven expenses, we find that the chancellor did not abuse her discretion in determining that there was a material change in circumstances.

II. Was the amount of increase in support proper?
¶ 8. Mr. Kilgore argues that the increase in support was improper since he is obliged to pay more than what the statutory guidelines require. Based on his asserted current income, $450 per month is approximately 22.9% of his adjusted gross income. Moreover, he argues that health and life insurance payments should be included *354 in the calculation, raising the percentage to 27.2%.
¶ 9. The Mississippi Code provides guidelines for determining the appropriate amount of child support. For an individual with one child, the suggested amount is 14% of "adjusted gross income." Miss. Code Ann. § 43-19-101 (Rev.1993). In the chancellor's supplemental opinion, she finds that Mr. Kilgore's net income is $1,962.74, the same figure provided by Mr. Kilgore as his adjusted gross income. The statute uses the phrase "adjusted gross income," and we find no error in the chancellor using the short-hand adjective "net." Whether it is called "net" or "adjusted gross," however, the father's income is much less than would normally permit a child support award of this amount.
¶ 10. The guidelines are just thatguidance. The chancellor is not to follow them mechanically. However, it is important for the guidelines to shape a decision, as they allow the needs of a child and the financial ability of a parent to be blended. There is no doubt something artificial about the guidelines, as the "needs" of a child do not depend on the ability of a parent to pay. Before a divorce, when the household is a unit, an employed spouse may not be making adequate income to provide well for the needs of anyone. There is nothing about a divorce that changes that financial reality. What the statutory guidelines usefully establish is a perspective for the financial level at which the basic needs of children are to be provided. A modification proceeding is not just an exercise in one spouse's showing how much is needed for all of a child's expenses. The proceeding must analyze, and the guidelines assist that consideration, the other spouse's finances.
¶ 11. Put another way, the supreme court has said that the support that is required is to be determined by a chancellor "at a time real, on a scene certain, and with a knowledge special to the actual circumstances and to the individual child or children." Smith v. Smith, 614 So.2d 394, 397 (Miss.1993). When the special circumstances cause the guidelines to be set aside, a written finding must appear on the record sufficient to overcome the presumption that such a deviation is inappropriate. Miss.Code Ann. § 43-19-103 (Rev. 1993). Among the factors which may be considered in rebutting the presumption are "(e) [t]he age of the child, taking into account the greater needs of older children" and "(i) [a]ny other adjustment which is needed to achieve an equitable result which may include, but not be limited to, a reasonable and necessary existing expense or debt." Id. In refusing to apply the guidelines, the chancellor relied on Ashley's increased age, as well as Mr. Kilgore's lack of veracity in completing his financial statements.
¶ 12. As to the increased age, we do not read the guidelines as applying solely to pre-adolescents. Had the divorce first occurred now instead of in 1987, these would still be the correct guidelines for determining the support of a teenager just as they were for support of a toddler. However, a chancellor might still validly consider that the child is in her teenage years and an upper departure from the guidelines for the remaining period that she must be supported is to be expected. If a chancellor varies support from the guidelines, it must still be a reasonable variation. We have found no authority for permitting the support award to be totally unanchored from the guidelines. There can be a deviation, but not a total disregarding of them.
¶ 13. The other factor referenced by the chancellor is that Mr. Kilgore admitted to several inconsistencies in his financial statements. He listed the value of his home at approximately $53,000, when in fact it, along with the land, appraised for $137,000. His monthly telephone bill is $57 rather than the $125 which he asserted in his statement. Although he listed his monthly credit card bill at $200, that account *355 had been paid off at the time of the hearing. Other inconsistencies included the fact that his monthly clothing bill is $40 instead of $100. Finally, he listed $290 as the amount he pays per month for auto insurance. However, he was unable to substantiate this figure.
¶ 14. The Mississippi Supreme Court has approved departures from the statutory guidelines due to a party's lack of complete veracity regarding his financial statements. Grogan v. Grogan, 641 So.2d 734, 741 (Miss.1994). Mr. Kilgore's untruthfulness went to his expenses, not his income as in Grogan. Adjusted gross income is gross income minus "(i) [f]ederal, state and local taxes ... (ii)[s]ocial security contributions; (iii)[r]etirement and disability contributions" and any court ordered support or funds expended for a child living in the same household as the obligor parent. Miss.Code Ann. § 43-19-101(3) (Rev.1993). Thus the expenses about which Mr. Kilgore may have attempted to mislead the chancellor did not affect his adjusted gross income and consequently, did not affect the integrity of the calculation of child support. An appropriate remedy to consider for misleading any court is contempt. We find no justification instead to levy a fine against Mr. Kilgore in the nature of increased child support.
¶ 15. Mr. Kilgore's adjusted gross income is $1,962.74 per month. Pursuant to the guidelines, support for his daughter would be 14% of his adjusted gross income. That would be about $280 per month. The chancellor awarded a sum more than 50% higher, raising his obligation to over 22% of his adjusted gross income. Ms. Fuller stated that her daughter's clothing, food, and extracurricular expenses had greatly increased. During that same period of time, Mr. Kilgore's salary decreased from $35,000 to $28,900. There was a debate during the remand hearing regarding whether Mr. Kilgore "voluntarily" took the lower salary, or whether as other evidence indicated that his back problems made it no longer possible to be a full-time truck driver. The chancellor made no finding regarding the lower income being the wrong amount to use. Even if his income was a little more than 20% higher, there is still a substantial deviation from the guidelines. The salary issue only affects the degree of deviation. Without any finding on that question, we hold that Mr. Kilgore's actual income is the correct one to use for the calculation. The award was more than 22% of Mr. Kilgore's income. The guidelines provide for 14%. The 22% is the amount that Mr. Kilgore would have had to pay consistent with the guidelines for support of three children, not his one daughter.
¶ 16. We consider three other arguments before resolving the validity of the award. Mr. Kilgore contends that if the $85 per month which he pays for life and health insurance are included, he pays 27% of his adjusted gross income, nearly double that recommended by the guidelines. What is to be considered as being within the guideline amount is therefore the issue. Is it just the amount specifically labeled "support" in a decree, or is it other amounts that directly benefit a child? Though the case predates and therefore did not discuss the guidelines, a supreme court opinion is instructive as to what amounts should be considered "child support" within the meaning of the statutory guidelines:
An order ... dealing with the care and maintenance of children of the marriage may, and often does, provide for the payment of several distinct types of expenses. The phrase "child support" is often used to describe all of these distinct expense payments. However, under the above cited code sections, regular child support is but one type of expense which the court may award for the care and maintenance of children. In the context of child care and maintenance orders, regular child support refers to the sums of money which the particular parent is ordered to pay for the child's basic, necessary living expenses, *356 namely food, clothing, and shelter. Other sums which a parent may be ordered to pay for the care and maintenance of the child are the expenses of a college, or other advanced education.... Still other items which may properly be awarded pursuant to a valid child care and maintenance order are health related expenses such as reasonable and necessary medical, dental, optical, and psychiatric/psychological expenses.
Of course, the foregoing items are not intended to be an exclusive listing, but are merely examples of the real distinction between regular child support and other types of payments for which a parent may become obligated under the terms of a valid child care and maintenance order under Sections 93-5-23 [that grants chancellors the right to provide for custody of children, child support, and alimony].
Nichols v. Tedder, 547 So.2d 766, 768-69 (Miss.1989). Thus the court distinguished traditional child support which pays "for the child's basic, necessary living expenses, namely food, clothing, and shelter," and the payments of other expenses such as for health, transportation, and college. Under this analysis, which is interpreting the meaning of "child support" under the general authority of a chancellor to award support in a divorce, we would hold that health, transportation, and college expenses are not included in determining the amount of the support under the guidelines though such extra obligations could well be considered for a downward departure from the guidelines under section 43-19-103. To that extent, whether such expenses are included initially as part of the calculation of a percentage of income or subsequently as to the reasonableness of applying the guidelines may only be a matter of irrelevant semantics.
¶ 17. Though Nichols points out different categories of child support, there is substantial authority for including all child-related expenses in the determination of whether the guidelines have properly been applied:
[T]he chancellor awarded $750 per month in child support and additionally ordered Joseph to maintain health and dental insurance on the two children. Thus, the total child support contribution by Joseph would be $964.47 per month.
Johnston v. Johnston, 722 So.2d 453, 462 (Miss.1998). The court went on to use the $964.47 amount in its calculation of the percentage of adjusted income that had been awarded as support. Id.
¶ 18. The Johnston court did not consider Nichols v. Tedder. However, several other cases have also held that awards other than the amount specifically labeled "child support" should be considered when applying the guidelines. Two recent cases have included other child-related expenses. Collins v. Collins, 722 So.2d 596, 598 (Miss.1998) ($450 support payment and $300 private school tuition combined in considering the guidelines); Johnson v. Johnson, 650 So.2d 1281, 1288 (Miss.1994) (only child support was awarded, and thus an $856 monthly house note obligation must be considered as child support; reversed because inadequate explanation of awarding almost 40% of income).
¶ 19. Regardless of whether the combining of all support-related amounts into one total should be taken as a specific holding of these precedents, we are compelled at least to treat all such amounts as a factor in determining whether a departure from the guidelines is justified. We make the necessary use of these figures after resolving the remaining preliminary questions.
¶ 20. Mr. Kilgore also contends that he is entitled to a deduction from his adjusted gross income for the expense of his present wife's nineteen year old son who resides with him. The guidelines statute provides that "[i]f the absent parent is also the parent of another child or other children residing with him, then the court may subtract an amount that it *357 deems appropriate to account for the needs of said child or children." Miss. Code Ann. § 43-19-101(3)(d) (Rev.1993). This allows a deduction for other children of Mr. Kilgore. That consideration does not apply to his new wife's son.
¶ 21. Finally, Mr. Kilgore argues that the chancellor impermissibly considered the income of his new spouse in determining his ability to pay. An obligor spouse's adjusted gross income "shall exclude any monetary benefits derived from a second household, such as income from the absent parent's current spouse." Miss.Code Ann. § 43-19-101(3)(a) (Rev. 1993).
¶ 22. The chancellor found that Mr. Kilgore's living expenses "were for the benefit of himself, his wife and her 19 year old son." Mr. Kilgore's testimony at the hearing was unclear but indicated to some extent that both he and his present wife pay the monthly bills. His financial statement was prepared by both of them and listed expenses that both pay. It is unclear from his testimony exactly what he alone pays per month in expenses.
¶ 23. Mr. Kilgore failed to provide proper financial information to the chancellor. We cannot say that she erred in considering the contributions of Mr. Kilgore's wife, as they were inextricably intertwined with the financial data of Mr. Kilgore. Again, however, that intertwining is of expenses. None of the defects in the data affect Mr. Kilgore's adjusted gross income, which is the basis on which to apply the guidelines.
¶ 24. After all these issues have been resolved, what this appeal ultimately must conclude is whether based on an approximate $2,000 per month adjusted income, and because of the age and expenses of his daughter, Mr. Kilgore can be made to pay support of over 22% of that income plus other significant child-related expenses, when the guidelines provide for 14%. If the Johnston approach is taken as a specific rule for these calculations, the entirety of Mr. Kilgore's child support is 27% of his adjusted income. As already indicated, the "award of child support is within the chancellor's discretion and will not be disturbed by this Court unless the chancellor was manifestly in error in his finding of fact and manifestly abused his discretion." McEachern v. McEachern, 605 So.2d 809, 814 (Miss.1992). The McEachern court emphasized that the child support guidelines "are mere guidelines and do not control the chancellor's award of child support." Id. Though the presumption of the appropriateness of the guidelines can be overcome by adequate reasons stated in the record and supported by evidence, our question also includes whether the reasons can justify a total ignoring of the guidelines. What we have is either a 22% award, with substantial other child-related payment obligations, or a 27% award. We look to precedents on what deviations have been upheld.
¶ 25. In Johnston, the court quoted the chancellor's justification for the award:
The Court is aware that [the] child support is 24.23% of the Husband's net income, an amount which slightly exceeds the statutory guidelines. Considering that the 4.23% variance is only $168, which is less than the cost of the health insurance, and the fact that the Husband is being allowed to claim one of the children as a tax deduction, the Court feels that this variance is justified in light of the total circumstances of the parties. The Court particularly notes the fact that the Husband, after he fulfills his monthly support obligation, will still have the same or more money per month to satisfy his reasonable monthly expenses and obligations than the Wife will have to fulfill the monthly obligations of herself and two children.
Johnston, 722 So.2d at 462. The supreme court found this to be an adequate written finding on the record sufficient to rebut the presumption. Id.
¶ 26. In the present case, however, we do not find that there has been a deviation from the guidelines adequately supported *358 by the record. For this award to stand, we would have to hold that not only are the guidelines not to be mechanically applied, they can be disregarded altogether. This is to be viewed either as an increase from 14% to over 22% with substantial additional child-related financial obligations, or as an outright deviation from 14% up to 27%. For five or more children, the guidelines only provide for 26% of adjusted income. Miss.Code Ann. § 43-19-101(1).
¶ 27. A chancellor's variation from the guidelines must at least keep the guidelines as a reference. We find that this support award has become totally unanchored and drifted free of all guidance. The justifications for that would need to be extraordinary and we find no such extreme circumstances here. We reverse and remand for further proceedings.
¶ 28. THE DECISION OF THE WARREN COUNTY CHANCERY COURT IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED AGAINST THE APPELLEE.
McMILLIN, C.J., BRIDGES, COLEMAN AND DIAZ, JJ., CONCUR.
KING, P.J. AND IRVING, J., CONCUR IN RESULT ONLY.
LEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY PAYNE AND THOMAS, JJ.
LEE, J., dissenting:
¶ 29. I disagree with the majority as to the weight it has applied to the child support guidelines as a factor in determining that an increase in child support should be denied. Since the child support award guidelines are not evidence of a material change in circumstances, it has been held that they are not in themselves sufficient to warrant a decrease in the amount of child support. Gregg v. Montgomery, 587 So.2d 928, 932-33 (Miss.1991); Thurman v. Thurman, 559 So.2d 1014, 1017 (Miss. 1990). It thus follows that the guidelines should not be invoked as the controlling factor in denying an increase in the amount of child support, as the majority has done in this case. This premise is especially applicable to the facts sub judice since the initial agreement providing for child support was made prior to the publication of the guidelines and necessarily without regard to them.
¶ 30. In Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147, 153 (1955), the Mississippi Supreme Court established the following nine guiding factors to aid in weighing the evidence to determine the proper award of child support:
(1) the health of the husband and his earning capacity;
(2) the health of the wife and her earning capacity;
(3) the entire sources of income of both parties;
(4) the reasonable needs of the wife;
(5) the reasonable needs of the child;
(6) the necessary living expenses of the husband;
(7) the estimated amount of income taxes the respective parties must pay on their incomes;
(8) the fact that the wife has the free use of the home, furnishings and automobile, and
(9) such other facts and circumstances bearing on the subject that might be shown by the evidence.
¶ 31. The Mississippi Supreme Court has stated that in this jurisdiction these nine factors are to be used in conjunction with the statutory guidelines to establish the proper award of child support. Draper v. Draper 658 So.2d 866, 869 (Miss.1995). The ninth factor provides that "other facts and circumstances bearing on the subject that may be shown by the evidence" may be considered in determining the proper amount of child support. This factor provides the appropriate forum to consider the weight to assign to Kilgore's inheritance *359 of a house and property valued at $137,000 in assessing his ability to increase the amount of his child support payments. It would also allow consideration for the fact that child support in this case has not increased in ten years. Use of the guidelines alone makes no allowance for such factors. This is a more comprehensive approach since the guidelines use income as the sole basis for setting the amount of child support. I thus respectfully dissent.
PAYNE AND THOMAS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.