965 So.2d 737 (2007)
Michael Jake WALLACE, Appellant
v.
Deborah Braun WALLACE (McCollum), Appellee.
No. 2006-CA-00035-COA.
Court of Appeals of Mississippi.
September 11, 2007.
*739 Patricia Peterson Smith, attorney for appellant.
J. Peyton Randolph, Jackson, attorney for appellee.
Before KING, C.J., GRIFFIS and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. Michael Wallace appeals the judgment of the Chancery Court of Warren County which upwardly modified his child support payments. Mr. Wallace argues that the trial court erred and made no finding of a material change in circumstances, among other issues. We find the trial court did not err and accordingly affirm its judgment.

FACTS AND PROCEDURAL HISTORY
¶ 2. Deborah Braun Wallace McCollum and Michael Jake Wallace were granted a divorce based on irreconcilable differences in 1988. They had one child during their marriage, Jacquelyn, who was about two years old at the time of the divorce. Regarding Jacquelyn's support, the property settlement agreement stated that Mr. Wallace would pay Ms. McCollum $325 per month, maintain a life insurance policy with Jacquelyn as the beneficiary, provide medical and dental insurance, and establish a savings account for Jacquelyn's benefit. In 1999, Mr. Wallace voluntarily agreed to increase child support according to a cost of living index. When this dispute arose, Mr. Wallace was paying $516.92 per month for child support. Additionally, Mr. Wallace continued voluntarily paying all of the medical costs for Jacquelyn and helped provide a vehicle for her in high school. Testimony and documentation also showed Mr. Wallace was regularly contributing more than his monthly child support payment towards other expenses of Jacquelyn's.
¶ 3. Subsequent to their divorce, both parties remarried. Mr. Wallace has two children from his current marriage and resides in Louisiana. Both parties are employed with stable jobs. Mr. Wallace has worked for Bechtel Construction Company for twenty-eight years. On his 8.05 financial declarations form, Mr. Wallace reported a monthly adjusted gross income of $6,102.15, not including taxes, mandatory insurance, mandatory retirement, or a per diem payment of $2,296, which would vary depending on the location of his job's current project site. Because Mr. Wallace's job with Bechtel required him to travel so much, Mr. Wallace visits Jacquelyn infrequently. He is only able to come home to his family in Louisiana about once a month. Ms. McCollum thus claims the financial and emotional responsibility of raising Jacquelyn falls on her.
¶ 4. Ms. McCollum currently resides in Clinton and works as an administrative assistant. According to her 8.05 financial declarations form, Ms. McCollum's monthly adjusted gross income is $2,904.26. She maintains a bedroom and bathroom for Jacquelyn when she comes home to visit from college on the weekends.
¶ 5. Since the divorce decree, there had been no further legal action between the parties until April of 2005, when Ms. McCollum filed a petition for modification of child support in the Chancery Court of *740 Warren County. Jacquelyn was about nineteen years old at the time. In the petition, Ms. McCollum claimed that "additional expenses associated with raising a daughter were not adequately addressed in the final judgment." Ms. McCollum stated Mr. Wallace was reluctant to help with these expenses. Specifically, Ms. McCollum requested that Mr. Wallace be required to pay one-half of Jacquelyn's college expense and one-half of her transportation costs.
¶ 6. According to testimony at the modification hearings, payment of Jacquelyn's transportation expenses had been an issue of contention for several years. Both parents contributed funds towards a used 2001 Nissan Altima for Jacquelyn in high school. Mr. Wallace paid for approximately one-half of the vehicle. In 2003, through no fault of Jacquelyn's, the vehicle was totaled. While Mr. Wallace wanted to shop around for a used vehicle of equal value to the Altima, Ms. McCollum unilaterally purchased for their daughter a new 2003 Saturn, costing $18,450.83. Ms. McCollum took the insurance proceeds from the Altima, which totaled $12,000, and applied the funds towards the payments for the new Saturn, which were $307.51 per month. Unfortunately, this vehicle proved unreliable. Ms. McCollum then purchased a new 2005 Toyota Scion for Jacquelyn, again without Mr. Wallace's input. Mr. Wallace did not contribute towards the payment of either vehicle, because he testified that his past contributions, specifically towards the Altima, were to provide Jacquelyn with transportation throughout high school and college. He disagreed with Ms. McCollum's decision to buy new cars for their daughter and thus declined contributing any money in excess of the $12,000 insurance proceeds for the Altima. As far as transportation expenses, Mr. Wallace provided Jacquelyn with a gas credit card when she went to college; however, Jacquelyn did not stay within the $80 per month budget he set. Mr. Wallace subsequently put a $100 cap on the card.
¶ 7. Jacquelyn's parents were also in dispute regarding payment of her college expenses. In high school Jacquelyn did well enough academically to win several scholarships to assist in her college tuition. She was also extremely active in extracurricular activities and community service. Because of her sheltered life in Clinton, Jacquelyn's father suggested that she attend a community college and obtain an associates' degree before attending a four-year university. Instead, Jacquelyn and her mother decided Jacquelyn should attend the University of Southern Mississippi ("USM"). During Jacquelyn's first year at USM, Mr. Wallace paid one-half of Jacquelyn's college expenses after scholarship payments. Unfortunately, as her father predicted, Jacquelyn did not do well at USM her first year. After mid-term grades came out her second semester, Mr. Wallace met with Jacquelyn and her mother. During this meeting, Mr. Wallace requested Jacquelyn pay one-third of her own college expenses because of her poor grades. His request was denied by both Jacquelyn and her mother; so he told them he would only pay $1,000 per semester.
¶ 8. At the end of her first year, Jacquelyn had been on academic probation both semesters, thus she lost her scholarships. Mr. Wallace testified he made the ultimatum that if Jacquelyn maintained the minimum academic standard of at least a C + in college, he would continue to help pay her educational expenses; otherwise, he would discontinue funding her college education. For housing, Jacquelyn had been living in the dormitory her first year at USM, but at the end of the spring semester she moved into an apartment in Hattiesburg with a few roommates. In the *741 summer Jacquelyn worked at two local restaurants as a server, earning approximately $600 per month. Her household expenses in Hattiesburg were approximately $415 per month. In the fall of 2005, Jacquelyn began attending Jones County Junior College ("Jones") in Ellisville and was doing well at mid-semester. Ms. McCollum testified she was paying Jacquelyn's entire tuition at Jones. Jacquelyn also continued to work part-time.
¶ 9. In October 2005, the chancellor issued a final judgment resulting in an increase of Mr. Wallace's child support, payable directly to Ms. McCollum, of $907 per month. This figure is fourteen percent of Mr. Wallace's adjusted gross income, calculated by the trial court to be $6,472.28 per month.[1] Furthermore, Mr. Wallace was ordered to continue to provide Jacquelyn with a gas credit card; continue to pay all medical and dental expenses not covered by insurance; pay one-half of Jacquelyn's college expenses, including tuition, books, fees, supplies, room and board[2] less any scholarships or grants; pay $1,925[3] towards Jacquelyn's vehicle at $100 per month until paid; and one-half of the license plate and insurance expenses on her vehicle. Both parties' requests for attorney's fees were denied. Also denied was Mr. Wallace's request for Jacquelyn's emancipation and his request that support payments be made directly to Jacquelyn. Mr. Wallace filed a motion to reconsider and a request for briefing. The chancellor granted the request for additional briefing. On December 29, 2005, the chancellor entered a memorandum opinion and final judgment reiterating her original October 2005 ruling. Mr. Wallace now appeals.

STANDARD OF REVIEW
¶ 10. When supported by substantial evidence, a chancellor's decision will not be reversed by this Court unless the chancellor "abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Kilpatrick v. Kilpatrick, 732 So.2d 876, 880(¶ 13) (Miss.1999) (citing Herring Gas Co. v. Whiddon, 616 So.2d 892, 894 (Miss. 1993)). In the area of divorce and child support particularly, this Court generally will not overturn the chancellor's findings of fact unless manifestly wrong. Vaughn v. Vaughn, 798 So.2d 431, 433(¶ 9) (Miss. 2001) (citing Nichols v. Tedder, 547 So.2d 766, 781 (Miss.1989)). "[T]he process of weighing evidence and arriving at an award of child support is essentially an exercise in fact-finding, which customarily significantly restrains this Court's review." Clausel v. Clausel, 714 So.2d 265, 266-67(¶ 6) (Miss.1998) (quoting Gillespie v. Gillespie, 594 So.2d 620, 622 (Miss.1992)). For questions of law, the standard of review is de novo. Vaughn, 798 So.2d at 434(¶ 9) (citing Harrison Co. v. City of Gulfport, 557 So.2d 780, 784 (Miss.1990)).

DISCUSSION
¶ 11. Mr. Wallace raises two issues on appeal. First, he claims the trial court *742 erred and did not make a finding of a material change in circumstances prior to increasing child support. Second, he claims the trial court erred in awarding child support payments payable to Ms. McCollum rather than to Jacqueline.
¶ 12. It is well-established that chancery courts may modify final divorce settlement decrees regarding child support. McEachern v. McEachern, 605 So.2d 809, 813 (Miss.1992). This authority is granted by statute and the inherent power of the chancery court. Id. (citing Campbell v. Campbell, 357 So.2d 129, 130 (Miss.1978)); Miss.Code Ann. § 93-5-23 (Supp.2006). The best interest of the child will always serve as the touchstone in coming to a determination regarding modification of child support. Tedford v. Dempsey, 437 So.2d 410, 417 (Miss.1983). The chancellor must balance the needs of the child against the ability of the parents to meet those needs. Caldwell v. Caldwell, 579 So.2d 543, 548 (Miss.1991) (citing Holston v. Holston, 58 Md.App. 308, 473 A.2d 459, 463 (Md.1984)).
I. Whether there was a material change in circumstances.
¶ 13. In order to obtain a modification of child support, the party seeking the change must prove there is a "substantial and material change in the circumstances of one of the interested parties arising subsequent to" the original decree. McEwen v. McEwen, 631 So.2d 821, 823 (Miss.1994) (citing Gillespie v. Gillespie, 594 So.2d 620, 623 (Miss.1992)). The Mississippi Supreme Court has articulated several factors which may be examined to determine whether a material change in circumstance has occurred, including "(1) increased needs of children due to advanced age and maturity, (2) increase in expenses, (3) inflation, (4) relative financial condition and earning capacity of the parties. . . ." McEachern, 605 So.2d at 813. Generally, the material change in circumstances must not have been reasonably foreseeable at the time of the divorce. Kilgore v. Fuller, 741 So.2d 351, 353(¶ 6) (Miss.Ct.App.1999). "However, the supreme court has never required that the natural growth of a child and the inevitable increased expenses that arise must be anticipated in the initial child support award for a toddler." Id.
¶ 14. Specifically, this Court and the Mississippi Supreme Court have held an increase in the payor's income is a proper and common reason for an increase in child support. See Wright v. Stanley, 700 So.2d 274, 283 (Miss.1997); Cox v. Moulds, 490 So.2d 866, 868-69 (Miss.1986). Modification based on an increase in an older child's needs coupled with an increase in the payor's income is proper as well. Hopson v. Hopson, 851 So.2d 397, 400(¶ 11) (Miss.Ct.App.2003); Shepherd v. Shepherd, 769 So.2d 242, 246(¶ 18) (Miss. Ct.App.2000). However, the custodial parent must provide evidence of increased costs and that the original award, due to increased financial obligations, no longer meets the child's current needs. Turner v. Turner, 744 So.2d 332, 336(¶ 17) (Miss.Ct. App.1999). Additionally, the Mississippi Supreme Court has held that a child's decision to attend college may be considered a material change in circumstances justifying child support modification. Lawrence v. Lawrence, 574 So.2d 1376, 1382 (Miss.1991).
¶ 15. In our case, the chancellor found a material change in circumstances had occurred because of Jacquelyn's age and proven expenses, especially with respect to her attending college. The chancellor based her decision predominately on the fact that it was "reasonable to assume that at [the time of their divorce] the parties were not anticipating the possibility of Jacquelyn *743 one day attending college since she was barely preschool age." We agree.
¶ 16. There was substantial evidence in the record to support the chancellor's findings of a material change in circumstances. The record also contained evidence of several factors supporting modification besides the increased needs and expenses of older children, such as inflation and an increase in the financial condition and earning capacity of the payor-parent. We find the chancellor did not abuse her discretion in determining this finding.
¶ 17. In her order, the chancellor focused on the increased financial needs for Jacquelyn as she is an older child and thus has more expenses. Evidence showed Jacquelyn's need for a reliable vehicle and its related expenses, college tuition, and living expenses. The fact that Mr. Wallace is unable to visit his daughter frequently usually makes Ms. McCollum responsible for Jacquelyn's out-of-pocket expenses, which she averaged at $1,178.60 per month, excluding college and vehicle expenses. Jacquelyn's share of rent and utilities were reported at $415 per month. While it is understandable that Mr. Wallace would be reluctant to pay for Jacquelyn's tuition after her poor performance at USM and subsequent loss of scholarships, evidence shows Jacquelyn did perform better at Jones. The chancellor found it reasonable that Mr. Wallace should be responsible for one-half of the expenses typical of children this age. We agree.
¶ 18. Also, although not addressed in the chancellor's order, inflation is another obvious material change in circumstances. The original child support amount was decreed seventeen years prior to the time of the modification request. Inflation over time has lessened the purchasing power of this figure. While Mr. Wallace did make voluntary increases for the cost of living at Ms. McCollum's request, the child support at the time of the hearing of this matter of $516.92 per month was found inadequate by the chancellor to maintain Jacquelyn's current expenses. We agree.
¶ 19. Finally, it was not contested that the earning capacity of Mr. Wallace had increased substantially in the seventeen years since the divorce. The trial court found Mr. Wallace's monthly adjusted gross income, according to financial statements submitted into evidence, to be $6,472.28. Ms. McCollum's monthly adjusted gross income was substantially lower than his at $2,904.26. Mr. Wallace has been employed by the same company, Bechtel, for nearly thirty years. He did not challenge Ms. McCollum's contention that his income has increased over this time period. This fact may be considered a change in circumstances.
¶ 20. Mr. Wallace argues that the material change must not be anticipated. He cites Douglas v. Douglas, 766 So.2d 68 (Miss.App.2000) for the proposition that because Ms. McCollum did not address college expenses at the time of the original decree, when Jacquelyn was two years old, she cannot later request a modification. In Douglas, the court affirmed the chancellor's decision to reduce child support payments upon the children's entry into college. Id. at 71(¶ 12). Yet, in Douglas, the original property settlement agreement provided for a modification of child support when the children went to college and the recipient of those payments was attempting to have the reduction invalidated. Id. In our case there was no such provision anticipating Jacquelyn would attend college and the child support would be modified at that time.
¶ 21. Jacquelyn's monthly expenses are considerably more than the $325 per month guaranteed by her father's original *744 child support obligation. Her living expenses are estimated at $415 per month, not including her vehicle, tuition, or college expenses. Jacquelyn is employed part-time and thus could presently contribute to her own expenses. However, the chancellor found that the court could not rely on the fact Jacquelyn would always be able to earn the same monthly income, estimated at $600 per month, while she attended school.
¶ 22. Because of the evidence of Jacquelyn's increased expenses for college, paired with inflation and an increase in the payor-parent's earning power, we find the chancellor did not abuse her discretion in finding a material change in circumstance.
II. Whether the chancellor properly increased the child support award.
¶ 23. Mr. Wallace was ordered to pay fourteen percent of his adjusted gross income, and also several other specified expenses for child support. Mr. Wallace argues that the increase in child support was improper because it was not supported by "extraordinary circumstances." Also, he maintains the chancellor failed to take into account numerous circumstances which would result in a downward adjustment in child support.
¶ 24. Our supreme court has stated that an order issued under Mississippi Code Annotated section 93-5-23 (Supp.2006) "dealing with the care and maintenance of children of the marriage may, and often does, provide for the payment of several distinct types of expenses." Lawrence, 574 So.2d at 1382. The term "child support" is used to describe all of these expenses. "Regular" or "basic" child support ordered pursuant to Mississippi Code Annotated section 43-19-101 (Rev.2004)[4] is just one type of payment that the court may award. Crow v. Crow, 622 So.2d 1226, 1230 (Miss.1993); Lawrence, 574 So.2d at 1382. Child support payments under section 43-19-101 create an award for support that goes towards the child's basic living expenses such as food, clothing, and shelter. Nichols v. Tedder, 547 So.2d 766, 769 (Miss.1989).
¶ 25. These figures are mere guidelines, however, and do not entirely control the chancellor's award of support. McEachern, 605 So.2d at 814 (citing Thurman v. Thurman, 559 So.2d 1014, 1017-18 (Miss. 1990)). Additional expenses, including but not limited to health insurance, out-of-pocket health expenses, transportation, and college expenses may be properly added to the basic support award. Nichols, 547 So.2d at 769. Also, in certain circumstances, the guidelines of section 43-19-101 may be set aside. Kilgore, 741 So.2d at 354(¶ 11) (citing Miss.Code Ann. § 43-19-103 (Rev.2004)). Then, "a written finding must appear on the record sufficient to overcome the presumption that such a deviation is inappropriate." Id. Factors to be considered in rebutting this presumption are "[t]he age of the child, taking into account the greater needs of older children," the child's independent income, or any other adjustment needed to achieve an equitable result, including necessary existing expenses. Id. (quoting Miss.Code Ann. § 43-19-103 (Rev.2004)). Furthermore, if the payor earns an adjusted gross income of more than $50,000, "the court shall make a written finding in the record as to whether or not the application of the guidelines" is reasonable. Miss.Code Annotated § 43-19-101(4) (Rev.2004).
*745 ¶ 26. On average, Mr. Wallace's adjusted gross income, taking into account its fluctuating nature because of his per diem payments, was consistently in excess of $50,000. The chancellor found, after considering the relevant evidence, that the application of the fourteen percent guideline for child support alone was not reasonable in this case and thus ordered payment of other expenses in addition to the child support. We determine that the chancellor's findings were adequate in support of her departure from the statutory guidelines. We address each of the child support expenses below.
A. College Expenses.
¶ 27. The chancellor ordered Mr. Wallace to pay one-half of Jacquelyn's college tuition and related expenses. It is well-settled that one or both parents may be ordered to pay part or all of a child's college tuition and related expenses. Saliba v. Saliba, 753 So.2d 1095, 1101(¶ 21) (Miss.2000) (citing Rankin v. Bobo, 410 So.2d 1326, 1328 (Miss.1982)). The duty of a parent to send a child to college is not absolute, however, but is dependent not only on the child's aptitude for college but also on "the child's behavior toward, and relationship with the [parent]." Lawrence, 574 So.2d at 1383 (citing Hambrick v. Prestwood, 382 So.2d 474, 477 (Miss.1980)). The parent must also have the ability to pay for the education without affecting his customary lifestyle. Saliba, 753 So.2d at 1101(¶ 21).
¶ 28. Under the facts of this case it was proper for the chancellor to order Mr. Wallace to pay one-half of Jacquelyn's college expenses. The record contains evidence that, while in high school, Jacquelyn showed the aptitude for and the potential to benefit from college according to her grade point average and test scores. Also, she was involved in numerous extra-curricular activities both at school and in the community. Not surprisingly, numerous partial scholarships were awarded to Jacquelyn in order for her to attend USM. Additionally, Mr. Wallace had the ability to pay for his daughter's college expenses without substantially affecting his customary lifestyle.
¶ 29. Mr. Wallace makes numerous arguments against paying one half of Jacquelyn's college expenses. He argues that he should not have to pay for a portion of Jacquelyn's college expenses until she improves her cumulative grade point average. We find no authority in Mississippi that allows the chancellor to make her award for college expenses completely contingent on academic performance. Furthermore, the chancellor found Mr. Wallace's argument that he should not have to pay Jacquelyn's college expenses because of her poor performance at USM unpersuasive because at the time of the hearing, Jacquelyn was improving her grades by attending Jones. The chancellor found the evidence of Jacquelyn's aptitude for college sufficient to justify this award. We agree.
¶ 30. Mr. Wallace cites as authority for the contention a minor child must maintain a minimum academic standard while in college Mizell v. Mizell, 708 So.2d 55 (Miss.1998) and Rogers v. Rogers 662 So.2d 1111 (Miss.1995). Mr. Wallace's reliance on this authority is misplaced, however. In Mizell, the supreme court found the chancellor abused his discretion on modifying the original decree regarding educational expenses. Mizell, 708 So.2d at 61(¶ 28). However, the supreme court did not create a minimum academic standard requirement in Mizell. Instead, the supreme court found the chancellor's findings inadequate because they were based on academic progress and not the requisite material change in circumstances. Mizell, 708 So.2d at 61(¶ 27).
*746 ¶ 31. Likewise, Rogers did not address a minimum standard of academic performance but inadequate academic progress of a non-minor. Rogers, 662 So.2d at 1115. In Rogers, the father had agreed in the original divorce decree to pay child support as long as his children attended school or college. Id. at 1113. Yet, the agreement was indefinite as to time limits or academic performance. Id. at 1115. Additionally, the "child" at issue in Rogers was beyond the age of majority and not making satisfactory progress towards a college degree. Id. at 1115. Ultimately, the Rogers court upheld the vague agreement and ordered the father to continue to pay the child's college expenses for a reasonable time. Id. at 1115-16. In our case we have no provision for collegiate expenses in the original decree and no provision for continued support of Jaquelyn past the age of majority.
¶ 32. Additionally, Mr. Wallace cites Hambrick in support of his argument that Jacquelyn does not exhibit the necessary respect for her father in order for the court to require him to pay for her college expenses. Yet, we find no evidence in the record that Jacquelyn lacks respect for her father, least of all to the extent exhibited in Hambrick, where the child had had absolutely no relationship with her father for over six years and did not desire one. Id. at 477. However, in our case the chancellor does note the considerable animosity between the mother and father, as evidenced through a series of e-mail exchanges.
¶ 33. Mr. Wallace labels college expenses "ordinary" expenses which must be included in the award for basic support pursuant to section 43-19-101(1) in the absence of a property settlement agreement which addresses college expenses separately. He cites several cases which discuss child support in the context of college expenses; however, none supports his contention. For example, in Southerland v. Southerland, 816 So.2d 1004 (Miss. 2002), the child's parents agreed prior to their divorce to send their child to private school. Id. at 1005(¶ 8). The supreme court found the chancellor's findings for payment of private school tuition inadequate because, while the parents' agreement to send the child to private school was a legitimate factor to be considered, on this case's facts, it was inadequate alone to support an award in excess of the statutory guidelines. Id. at 1007(¶ 13). The court remanded the case for the chancellor's required on-the-record findings pursuant to section 43-19-103. Id. at 1007(¶ 14). In Southerland's second appeal, however, the supreme court affirmed the award of private school tuition based on the chancellor's new findings on remand. Southerland v. Southerland, 875 So.2d 204, 206-07 (¶ ¶ 7-9) (Miss.2004). The chancellor found private school tuition was deemed an extraordinary expense not contemplated by the statutory guidelines and awarded its payment. Id. at 207(¶ 7).
¶ 34. Mr. Wallace also cites Mizell, where that court found the chancellor abused his discretion in altering the original decree regarding payment of college expenses because there was no material change in circumstances. Mizell, 708 So.2d at 61(¶ 28). However, Mizell is distinguishable from our case because the original decree addressed college expenses, as the child was fifteen years old at the time of divorce. Id. at 57-58 (¶ ¶ 3-4). In our case no college expenses were addressed in the original decree which was created when Jacquelyn was a toddler. Again, in Mizell, the court found the chancellor erred in that his decision was based largely on the child's poor academic progress in college, not a material change in circumstance. Id. at 61(¶ 27).
*747 ¶ 35. We find the chancellor did not abuse her discretion in ordering Mr. Wallace to pay one-half of Jacquelyn's college expenses. Jacquelyn and her father both met the requisites for this award to be proper. We find no error.
B. The Vehicle and Its Expenses.
¶ 36. The chancellor ordered reimbursement for a portion of the vehicle Jacquelyn was driving at the time of this action, amounting to $1,925, to be paid at $100 per month, along with one-half of the license plate and insurance, as necessary expenses. The chancellor noted as evidence that this award was a necessary expense because of the fact Jacquelyn attended school 100 miles away from her mother's residence. Also, Mr. Wallace rarely visits Jacquelyn himself. Jacquelyn works part-time while going to school twenty-five miles away from her residence. Therefore, the chancellor concluded, Jacquelyn must have reliable transportation. We agree.
¶ 37. Mr. Wallace, however, argues that Jacquelyn's transportation expenses are "ordinary" expenses and it was improper for the chancellor to order him to pay them. He cites Hammett v. Woods, 602 So.2d 825 (Miss.1992) as authority for his contentions. Yet, Hammett is factually distinguishable as that case dealt with reimbursement of transportation costs of a disabled child to a school for the deaf every other weekend. Id. at 827. The court denied the expenses for several reasons, but mainly because there was insufficient evidence in the record to support the chancellor's findings that the transportation was necessary to the child's education. Id. Also, the transportation expenses had been voluntarily assumed by the non-paying parent. Id. Finally, the child had many other options, not just regarding transportation, but also his school's location. Id.
¶ 38. In our case, evidence and testimony in the record show Jacquelyn's need for reliable transportation. We agree with the chancellor that reimbursement for a portion of Jacquelyn's vehicle and payment of one-half of her license plate and insurance are reasonable expenses. We find substantial evidence to support the chancellor's findings awarding this expense.
C. Medical and Dental Expenses.
¶ 39. Since Mr. Wallace had previously been paying Jacquelyn's medical and dental expenses voluntarily, the chancellor found it inequitable to give him the opportunity to withdraw this support. She thus ordered their continued payment.
¶ 40. Mr. Wallace contends that the original property settlement agreement only required him to pay Jacquelyn's medical and dental insurance expenses and it is against public policy to force him now to pay her medical and dental expense. However, Mississippi law holds it is proper for health insurance and out-of-pocket medical expenses to be added on to the basic award of support. See Nichols v. Tedder, 547 So.2d 766, 769 (Miss.1989). We find no error in this award.
D. Mr. Wallace's Downward Adjustment in Child Support Argument.
¶ 41. In his brief, Mr. Wallace makes the argument that in the alternative of lessening the expenses he was ordered to pay by the chancellor, there should be a downward adjustment in child support. First, he claims the chancellor did not take into account the expenses of his subsequent two children from his current marriage. He also contends the chancellor failed to take into account Jacquelyn's own income from her part-time employment. We find his arguments unpersuasive.
*748 ¶ 42. Mr. Wallace cites Kilgore v. Fuller, 741 So.2d 351 (Miss.Ct.App.1999) at length for the legal proposition that health, transportation, and college expense payments should trigger a downward modification from the statutory child support guidelines. Mr. Wallace argues that Ms. McCollum did not prove any increased costs in supporting Jacquelyn.
¶ 43. Factually, Kilgore is similar to our case in that the divorce took place when the child was a toddler and the modification occurred when the child was a teenager. However, Kilgore is distinguishable from the case at bar because college expenses were not at issue and the payor-parent was not earning in excess of $50,000 annual adjusted gross income. In Kilgore, our court did not increase child support because the deviation from the guidelines was inadequately supported by the record. Kilgore, 741 So.2d at 357-58(¶ 26). In our case the record supports Ms. McCollum's stated additional expenses.
¶ 44. Mr. Wallace further asks this Court to deduct at least 20% of his adjusted gross income for the support costs of his two subsequent children. Statutory law allows for the consideration of subsequent children's expenses, and "the court may subtract an amount that it deems appropriate to account for the needs" of these children under Mississippi Code Annotated section 43-19-101(3)(d) (Rev.2004). However, the chancellor did not find this necessary, as Mr. Wallace's annual adjusted gross income would still be well over $50,000 even if the estimated expenses for his other two children, calculated by Mr. Wallace to be $1,294.46, were deducted. We agree.
¶ 45. Mr. Wallace also argues that Jacquelyn's own part-time employment income, averaged at $600 per month, should have been considered in making a downward modification of the support award according to Mississippi Code Annotated section 43-19-103(b) (Rev.2004). In her order, the chancellor addressed this income and found that since the amount would fluctuate, as Jacquelyn was a college student and this income was from part-time work, it would not be proper to take this income into consideration. We do not find the chancellor was in error regarding this determination.
¶ 46. Mr. Wallace also requests that an additional $550 per month for travel expenses incurred to visit his family be deducted from his adjusted gross income figure. Although he does not dispute the $2,296 deducted from the adjusted gross income for his per diem payments, Mr. Wallace claims travel expenses beyond per diem may also be deducted. He cites no relevant authority for this proposition, however, nor do we find any authority requiring this deduction.
¶ 47. We find Mr. Wallace's argument for a downward adjustment in child support payments to be without merit.
III. Whether child support payments should properly continue to Ms. McCollum.
¶ 48. The chancellor denied Mr. Wallace's request that child support payments be paid to Jacquelyn instead of Ms. McCollum. The court may require payment to the custodial parent according to Mississippi Code Annotated section 93-11-65(1)(c) (Supp.2006). We note "[c]hild support is given to the custodial parent strictly for the benefit and protection of the child." Nichols, 547 So.2d 766, 781 (Miss. 1989) (citing Hailey v. Holden, 457 So.2d 947, 950 (Miss.1984)). The chancellor found Mr. Wallace should continue to make his child support payments to Ms. McCollum. We agree.
*749 ¶ 49. Mr. Wallace argues that since Jacquelyn no longer lives permanently at her mother's home, her mother should not receive the child support payments. Mr. Wallace cites Nichols as authority, stating that there, because the child no longer lived with his mother, she no longer received the child support payments. Nichols, 547 So.2d at 781. Yet, in Nichols, the child moved from the mother's to the father's residence. Id. Thus, once the child moved in with his father, there was no logical reason for child support payments to continue to his mother. Id. That is not the situation here. Jacquelyn has never lived with her father; she lived with her mother in Clinton until she attended college. Her mother maintains a room and bathroom for her when Jacquelyn decides to come home on the weekends. Ms. McCollum is Jacquelyn's custodial parent. Thus, we find the chancellor did not err in continuing to direct support payments to Ms. McCollum. This issue is without merit.
IV. Attorney's Fees.
¶ 50. The chancellor denied both Ms. McCollum's and Mr. Wallace's request for payment of attorney's fees below. Mr. Wallace does not dispute this as proper, but instead requests attorney's fees and costs for his defense related to this appeal. We deny Mr. Wallace's request since he did not prevail on appeal.

CONCLUSION
¶ 51. We find no manifest error in the chancellor's findings of child support for Jacquelyn, nor do we find the award an abuse of discretion. The child support award was supported by substantial evidence from the record. Nor did the chancellor err in departing from the statutory guidelines by awarding additional expenses. Accordingly, we affirm the chancellor's final judgment.
¶ 52. THE JUDGMENT OF THE CHANCERY COURT OF WARREN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] In her October 25, 2005 judgment, the chancellor explained this figure was arrived at by taking Mr. Wallace's May 2005 reported gross income of $10,051.99 per month, less $2,296 per diem expenses, less $1,191.18 taxes and mandatory retirement, less $92.53 for Jacquelyn's share of medical and dental insurance.
[2] Alternatively, if Jacquelyn chose to continue living in an apartment off-campus, this figure would include one-half of those expenses, not to exceed the housing and board fee for on-campus housing at the school she attends.
[3] This amount is the difference between the $18,450.83 cost of the new Saturn and Mr. Wallace's original investment on the Altima of $4,525, plus the $12,000 insurance proceeds from this car.
[4] This statute provides child support award guidelines in the form of a rebuttable presumption, furnishing the percentage of adjusted gross income that should be awarded for support according to the number of children due support. Miss.Code Ann. § 43-19-101 (Rev.2004).