# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01373-COA

**DEDRIC BENNETT**                                                          **APPELLANT**

**v.**

**BETTY J. BENNETT**                                                         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/17/2019 |
| TRIAL JUDGE: | HON. JAMES CHRISTOPHER WALKER |
| COURT FROM WHICH APPEALED: | YAZOO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | CHRISTOPHER JACKSON WELDY |
| ATTORNEY FOR APPELLEE: | BETTY J. BENNETT (PRO SE) |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 04/27/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WILSON, P.J., GREENLEE AND WESTBROOKS, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Dedric and Betty Bennett divorced in 2016. In 2018, Betty filed a petition for contempt and a motion for modification of Dedric's child-support obligation. The Yazoo County Chancery Court denied Betty's request for contempt but granted her request for an increase in child support. On appeal, Dedric challenges the chancery court's judgment. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     In January 2016, Dedric and Betty divorced on the ground of irreconcilable differences. At the time of the divorce, the couple had minor twin sons.[1] In a property

---

[1] The twins were born in October 2000.

settlement agreement (PSA), which was incorporated into the divorce decree, the parties agreed that Dedric was to pay Betty $375 per month on the first day of each month for child support until the twins reached the age of majority or became emancipated.[2] Additionally, the PSA provided that Betty was to maintain her major medical insurance policy for the benefit of the twins. However, Dedric and Betty were to split on a 50/50 basis "any and all deductibles and all uncovered medical, hospital, dental, orthodontic, optical, [ophthalmological], psychological, psychiatric and prescription drug expenses not covered by [the insurance policy]."

¶3.    On November 5, 2018, Betty filed a "Petition for Citation of Contempt and Motion for Modification of Former Judgment of Divorce." Betty asked the court to find Dedric in contempt for failing to pay child support in full on the first day of each month and for failing to pay his 50 percent of the uncovered medical expenses. Betty alleged that Dedric was in arrears in the amount of $2,845.91 and attached an "Affidavit of Arrearage" to her petition. Betty also requested the court to increase Dedric's child-support obligation. Betty alleged that she had increased expenses associated with the twins because Dedric had not exercised regular visitation. She also alleged that Dedric had obtained another job, which provided him with additional income.

¶4.    During a hearing on July 3, 2019, Betty indicated that the twins were covered by her dental and vision insurance and Dedric's medical insurance. She explained that after she

---

[2] Prior to the divorce, a temporary order required Dedric to pay child support. At the time of the divorce, Dedric was in arrears in the amount of $1,200. The PSA provided that he would pay an additional $50 per month until the arrearage was paid in full.

paid the $250 deductibles for each policy, insurance would cover eighty percent of the expenses, and the insured was responsible for paying the remaining twenty percent. Betty introduced a number of financial documents in an attempt to show that Dedric had not paid his fifty percent of the twins' uncovered dental and vision expenses.

¶5.     According to Betty, one of the twins had a root canal and a dental crown placed on one of his teeth. Exhibits 1 and 2 consisted of a statement from Greggory Tharp, DMD, dated April 3, 2019, and a check indicating that Betty had paid $259. Exhibits 3 and 5 consisted of another statement from Dr. Tharp dated April 17, 2019, and a check indicating that Betty had paid $750. However, Betty admitted that she had not sent copies of the statements to Dedric.

¶6.     According to Betty, the twins needed dental braces. Exhibit 6 was an "Orthodontic Payment Agreement" from Smile Design Orthodontics dated August 6, 2018. The document explained that a $500 deposit was required prior to the placement of braces and outlined a future payment schedule. However, Betty admitted that the expenses had not yet been incurred. Exhibit 7 was a letter from the office manager at Smile Design Orthodontics noting that the twins had appointments scheduled and that $150 would be due at that time. Betty suggested that she had paid the $150 but did not provide a receipt.

¶7.     Betty also testified that the twins wore contact lenses. Exhibit 8 consisted of two billing statements from Professional Eyecare Associates of Yazoo dated July 6, 2018. Betty testified that a total of $240 had been paid. Betty admitted that Dedric may have paid a portion of the amount, and Dedric testified that he had paid $120 via money order.

¶8. Exhibit 10 consisted of two statements for oral evaluations from Gary Keeler, DDS, at Oral Maxillofacial Surgery LLC dated September 20, 2018. One indicated that $57.50 had been paid, and the other indicated that $75 had been paid. Betty testified that she had sent the invoices to Dedric but had not been reimbursed. Dedric testified that he had paid his fifty percent of the expenses.

¶9. Finally, Exhibit 11 contained a receipt from Mary Olivia Cook, DMD, MS, dated September 21, 2018. The statement indicated that Betty had paid $575. Betty testified that she sent the receipt to Dedric via certified mail, but the envelope was returned to her.

¶10. Betty admitted that she had received $250 via money order from Dedric; however, she testified that it did not specify which medical expenses it was supposed to cover. Dedric testified that he wanted to pay his fifty percent of the uncovered medical expenses, but he needed notice that the expenses had been incurred in order to pay. Dedric explained that he had not paid his portion of the twins' uncovered dental expenses from April 2019 because he had received the statements less than a month before the hearing, but he intended to pay them.

¶11. With respect to Betty's request for a modification of child support, she testified that Dedric had not exercised regular visitation. Dedric admitted that he had not seen the twins in approximately six months. Dedric also admitted that he had obtained a part-time job for a security agency since the divorce.[3] And Dedric's attorney acknowledged that he had obtained a new job. During the hearing, Betty testified that child support should also be

_____

[3] Dedric testified that he was retired at the time of the divorce.

4

modified due to the twins' increased medical expenses. Betty testified that one of the twins had been in a car accident. Dedric acknowledged the ongoing medical expenses associated with the accident, but Dedric's attorney argued that it occurred after the petition was filed. Dedric's attorney also argued that child support was no longer required because the twins had not registered for college and were therefore emancipated.[4] In response, Betty testified that the twins intended to register for college.

¶12. The court was not provided with Betty's Rule 8.05 financial statement,[5] but she briefly testified about her finances. Dedric's Rule 8.05 financial statement indicated that he had a gross total monthly income of $3,339.60 and a net monthly income of $3,239.60. It also indicated that he had $3,095.87 in combined total expenses. Although the "Statement of Assets" section was missing, Dedric testified that he had approximately $100 in his checking account, $237 in his savings account, and approximately $200 in his mutual fund. He also testified that he owned his home and that he did not have a mortgage. The "Statement of Liabilities" section was crossed out.

¶13. At the conclusion of the hearing, the court stated that it had "absolutely no idea how much [money was] owed to anybody . . . ." However, the court denied Betty's contempt request and held that any expenses incurred shall be presented to Dedric within twenty days of incurring the expense, and Dedric shall have thirty days to pay the amounts directly to the

---

[4] Pursuant to Mississippi Code Annotated section 93-11-65(8)(b) (Rev. 2018), a court *may* determine that emancipation has occurred "when the child . . . [d]iscontinues full-time enrollment in school having attained the age of eighteen (18) years, unless the child is disabled . . . ."

[5] UCCR 8.05.

providers. With respect to Dedric's child-support obligation, the court found that the twins had not been emancipated. After considering the *Adams*[6] factors, the court held that Dedric's "slight increase in income" and "increase in needs as it related to [the twins]" constituted a material change in circumstances warranting an increase in child support from $375 to $575 per month beginning August 1, 2019. The court declined to award attorney's fees to either party.[7]

¶14. Subsequently, Dedric filed a "Motion to Alter or Amend the Judgment, or in the Alternative, Motion for Specific Findings of Fact and Conclusions of Law." Dedric asserted that Betty had not presented specific proof of the twins' increased expenses. And he requested that the court reinstate the prior child-support obligation of $375 or, alternatively, make "specific findings of fact and conclusions of law as to the material change in circumstances and as to the specific facts of the children's increased expenses." In her response, Betty asserted that modification was appropriate because the twins had increased in age and had "grown in stature, size[,] and consumption." She also suggested that inflation supported the modification of child support.

¶15. In August 2019, the court entered an order denying Dedric's motion to alter or amend the judgment. The court stated that Betty had presented "substantial testimony and proof of increased expenses of the [twins] including but not limited to optical and dental expenses." The court noted "[b]oth boys wear contacts and are in need of braces." The court stated that

---

[6] *Adams v. Adams*, 467 So. 2d 211, 215 (Miss. 1985).

[7] The court entered a written order memorializing its bench ruling.

it "considered the increase in optical and dental expenses along with the increased needs of the [twins] due to their advanced age and determined that an upward modification of child support . . . [was] appropriate." Now Dedric appeals.

## STANDARD OF REVIEW

¶16. "The award of child support is a matter within the discretion of the chancery court, and it will not be reversed unless the chancery court was manifestly wrong in its finding of fact or manifestly abused its discretion." *Best v. Oliver*, 296 So. 3d 140, 142 (¶7) (Miss. Ct. App. 2020) (internal quotation marks omitted) (quoting *Gillespie v. Gillespie*, 594 So. 2d 620, 622 (Miss. 1992)).

## DISCUSSION

¶17. We must decide whether the chancellor abused his discretion by modifying Dedric's child-support obligation. Dedric argues that the alleged increased expenses associated with the twins' age and his alleged increased income do not constitute a material change in circumstances warranting modification. He contends that Betty failed to provide sufficient evidence of the increased expenses, and therefore the court's judgment must be reversed.

¶18. Child support can be modified if there has been "a substantial or material change in the circumstances not reasonably foreseeable at the time of the most recent support decree." *Id*. at (¶9) (citing *Kilgore v. Fuller*, 741 So. 2d 351, 353 (¶6) (Miss. Ct. App. 1999)). According to our supreme court, "children's expenses generally increase as they get older, that the father and mother's earning capacity will generally increase from year to year, and that inflation will continue at some level and will partially affect both the children's expenses

7

and the parents' earning capacity." *Id*. (quoting *Tedford v. Dempsey*, 437 So. 2d 410, 419 (Miss. 1983)).

¶19. "While it is foreseeable that expenses increase with the natural growth of a child, the amount of the increase is not." *Id*. at (¶10) (citing *Kilgore*, 741 So. 2d at 353 (¶6)). As recognized by our supreme court "rare is the child whose financial needs do not increase with age." *Id*. "It would be unfair to require under the foreseeability test that the initial child-support award include anticipated future increased expenses." *Id*. "Because it is impossible for a court to foresee in the initial support award what allowances to make for a child years into the future, we leave that for modification proceedings." *Id*.

¶20. "When determining whether modification of child support is warranted, the chancery court may consider the factors provided in *Adams v. Adams*, 467 So. 2d 211, 215 (Miss. 1985)." *Id*. Among these factors are the "increased needs caused by advanced age and maturity of the children[,] . . . increase in expenses[,] . . . and the relative financial condition and earning capacity of the parties . . . ." *Id*.

¶21. In her petition, Betty alleged that there had been increased expenses associated with the twins because Dedric had not exercised regular visitation. She also alleged that Dedric had obtained another job, which provided him with additional income. At the hearing, Dedric admitted that he had not seen the twins in approximately six months. Dedric further admitted that he was retired at the time of the divorce and had since obtained a part-time job for a security agency. Dedric's attorney also acknowledged that Dedric had obtained a new job.

¶22. Additionally, Betty asserted that the twins' increased medical expenses supported a modification of child support. Dedric argues that "it was reasonably foreseeable that [he] would have to contribute his 50% for [the twins'] eye and dental care, for this was part of the Property Settlement Agreement." However, the PSA could not anticipate the amount of future increased medical expenses.

¶23. After considering the *Adams* factors, the court held that Dedric's "slight increase in income" and "increase in needs as it related to [the twins]" constituted a material change in circumstances warranting an increase in child support. Later, the court held that Betty had presented "substantial testimony and proof of increased expenses of the [twins] including but not limited to optical and dental expenses." The court noted that "[b]oth boys wear contacts and are in need of braces." The court stated that it "considered the increase in optical and dental expenses along with the increased needs of the children due to their advanced age and determined that an upward modification of child support . . . [was] appropriate." After reviewing the record, we cannot say that the chancery court abused its discretion.

¶24. Finally, Dedric requests attorney's fees and costs of appeal. However, our supreme court has recently held that a request for appellate attorney's fees must be made in a motion that complies with Mississippi Rule of Appellate Procedure 27(a). *Latham v. Latham*, 261 So. 3d 1110, 1114-16 (¶¶21-24) (Miss. 2019). Because Dedric did not file such a motion, we decline to address any request for attorney's fees on appeal.

¶25. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

9