IRVING, J„
for the Court:
¶ 1. Mitchel Howell sought modification of his child-support obligation to his son, Hayden. Hayden initially lived with his mother, Betty Howell Turnage. However, in August 2008, Hayden left Betty’s home and moved into Mitchel’s home. Specifically, Mitchel sought reimbursement for child-support payments made on Hayden’s behalf after Hayden left Betty’s home and began working full time. The Lawrence County Chancery Court found that Hayden was emancipated as of April 2009 and refused to credit Mitchel for child-support payments made on Hayden’s behalf after Hayden left Betty’s home in August 2008. Additionally, the chancery court placed a restriction on Mitchel’s visitation with the Howells’ teenaged daughter, Hannah, that prohibited overnight visits when non-related third parties of the opposite sex were also spending the night. Feeling aggrieved, Mitchel appeals and asserts that *595 the chancellor erred: (1) in failing to credit him for child-support payments made on Hayden’s behalf after Hayden left Betty’s home and started working full time, and (2) in restricting his overnight visitation with his daughter when non-related third parties of the opposite sex are present.
¶2. Because the undisputed testimony showed that Hayden moved out of Betty’s home and into Mitchel’s home in August 2008 and there was no evidence that Mitchel’s girlfriend’s presence adversely affected Hannah, we reverse and render the judgment of the chancery court and remand this case for a determination of Mitchel’s credit for child-support payments made on Hayden’s behalf after August 2008.
FACTS
¶ 3. Mitchel and Betty were married in September 1989 in Lawrence County, Mississippi. On July 19, 2004, the’ chancery court granted the couple a divorce on the ground of irreconcilable differences. The Howells had two minor children at the time of the divorce: Hayden, born September 2, 1990, and Hannah, born October 22, 1994. Betty was granted physical and legal custody of the children. Mitchel was to have regular visitation with the children as agreed upon by the parties. Additionally, Mitchel was to pay $2,000 per month for support of his minor children. However, Betty was obligated to use a portion of the $2,000 to pay the mortgage note on the marital home. On October 24, 2005, after a reduction in his income, Mitchel filed a petition to modify his support obligation. On November 26, 2007, the chancery court entered an agreed order of modification that reduced Mitchel’s obligation to $1,850 per month.
¶ 4. On December 19, 2008, Mitchel filed another petition for modification. Mitchel sought reimbursement for the child support that he had paid on Hayden’s behalf since Hayden left Betty’s home in August 2008. Mitchel alleged that Hayden had been emancipated.
¶ 5. As stated, in August 2008, Hayden, left his mother’s home to live with his father full time. Hayden also began working full time in September 2008. Since then, Hayden has been responsible for all of his personal expenses with the exception of housing and food, which Mitchel provides. During the time that Hayden lived with Mitchel, he continued to make child-support payments on behalf of both Hayden and Hannah.
¶ 6. The chancellor found that Hayden had been emancipated and suspended Mitchel’s support obligation in relation to Hayden. However, the chancellor determined that Hayden’s emancipation was effective as of April 2009, not September 2008. As such, the chancellor found that Mitchel was not entitled to reimbursement or credit for child-support payments made on Hayden’s behalf prior to April 2009.
¶ 7. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 8. Our review of domestic-relations cases is limited to the “substantial evidence/manifest error rule.” R.K. v. J.K., 946 So.2d 764, 772 (¶ 17) (Miss.2007) (citing Mizell v. Mizell, 708 So.2d 55, 59 (¶ 12) (Miss.1998)). As such, “[an appellate] court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous[,] or an erroneous legal standard was applied.” Id. (citing Mizell, 708 So.2d at 59 (¶ 18)).

1. Child-Support Credit

¶ 9. Mitchel argues that the evidence at trial supports that Hayden left *596 his mother’s home and moved in with Mitchel in August 2008 and was fully emancipated in September 2008. Therefore, he contends that he is entitled to a credit for child-support payments made on Hayden’s behalf after Hayden moved in with him and became emancipated.
¶ 10. Mississippi Code Annotated section 93 — 11—65(8)(a) (Supp.2010) provides that:
The duty of support of a child terminates upon the emancipation of the child. Unless otherwise provided for in the underlying child[-]support judgment, emancipation shall occur when the child:
(i) Attains the age of twenty-one (21) years, or
(ii) Marries, or
(iii) Joins the military and serves on a full-time basis, or
(iv) Is convicted of a felony and is sentenced to incarceration of two (2) or more years for committing such felony[.]
Additionally, the Mississippi Supreme Court has made it clear that “a parent is relieved of the legal duty to support their child once the child is emancipated, by attaining the age of majority or otherwise.” Dep’t of Human Servs. v. Fillingane, 761 So.2d 869, 871 (¶8) (Miss.2000) (citing Nichols v. Tedder, 547 So.2d 766, 770 (Miss.1989)).
¶ 11. Hayden testified that he began living with his father full time in August 2008. Hayden further testified that he began working full time in September 2008 and that other than food and housing, which his father provided, he supported himself. Betty acknowledged in her testimony that Hayden moved in with his father in August 2008 and began working on a full-time basis in September 2008. Betty further testified that Mitchel continued to pay child support in the full amount of $1,850 even after Hayden had left her home. Despite Hayden’s undisputed testimony, the chancellor determined that Hayden was emancipated as of April 2009 and that Mitchel was not entitled to a credit for the child-support payments made on Hayden’s behalf.
¶ 12. Our supreme court has previously credited a father for child-support payments made on behalf of a child who had left the mother’s home and moved in with him. Alexander v. Alexander, 494 So.2d 365, 368 (Miss.1986). The Alexander court reasoned that allowing the mother to continue to receive child-support payments for a child who no longer lived with her would constitute unjust enrichment. Id.
¶ 13. Our supreme court has also permitted a credit for child-support payments made after a child’s emancipation. See Fillingane, 761 So.2d at 872 (¶ 13); Sumrail v. Munguia, 757 So.2d 279, 284 (¶ 28) (Miss.2000). In Sumrall, the father argued that the chancery court erred when it failed to reduce retroactively his child-support payments to the date his son entered college. Sumrall, 757 So.2d at 284 (¶ 26). Our supreme court agreed and ordered a retroactive modification, which gave the father credit for child-support payments made after his son entered college. Id. at (¶ 28). In Fillingane, our supreme court re-affirmed its position in Sumrall and upheld a chancellor’s decision to credit a father’s child-support arrearage in light of his daughters’ emancipation. Fillingane, 761 So.2d at 872 (¶ 13). Furthermore, our supreme court has stated that non-custodial parents should be allowed to prove that they should receive credit for child-support payments made from “the point in time where the changes occurred. ...” Sumrail, 757 So.2d at 284 (¶ 27) (emphasis added).
¶ 14. In the present case, the testimony is clear that Hayden had left his mother’s *597 home in August 2008 and had taken full-time employment in September 2008. The chancellor’s election of April 1, 2009 as the date of Hayden’s emancipation is not supported by the evidence and is manifestly wrong. This Court finds that modification of child support should be retroactive to August 2008, the date that Hayden moved in with Mitchel, and that Mitchel should receive a credit for child support paid on Hayden’s behalf from August 2008 on.
£ Visitation Restriction
¶ 15. At the close of the modification hearing, the chancellor voiced concern regarding Hannah’s visiting Mitchel’s home when his girlfriend was also spending the night. Consequently, the chancellor restricted Mitchel’s visitation with his teenaged daughter, Hannah. Specifically, the chancellor prohibited overnight visitation with Hannah “in any dwelling where a member of the opposite sex, to whom [Mitchel] is not related is also spending [the] night.”
¶ 16. The chancellor has broad discretion in determining visitation and imposing restrictions upon it. Dunn v. Dunn, 609 So.2d 1277, 1286 (Miss.1992). However, absent a finding of “actual danger or other substantial detriment to the children,” a chancellor may not restrict a non-custodial parent’s visitation. Id. There was absolutely no evidence in the record that overnight visits in the presence of Mitchel’s girlfriend adversely affected Hannah. Therefore, the chancellor abused his discretion in placing a restriction on Mitchel’s visitation.
¶ 17. THE JUDGMENT OF THE LAWRENCE COUNTY CHANCERY COURT IS REVERSED AND RENDERED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE. ROBERTS AND MAXWELL CONCUR. CARLTON, J„ DISSENTS WITHOUT SEPARATE WRITTEN OPINION. KING, C.J., NOT PARTICIPATING.